**George A. PROCTOR, Petitioner,**

v.

**HACKERS' BOARD, Government of the District of Columbia, Respondent.**

**No. 5167.**

District of Columbia Court of Appeals.

Argued May 25, 1970.

Decided July 28, 1970.

6.  United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

7.  393 U.S. at 415, 89 S.Ct. at 588.

Henry Lincoln Johnson, Jr., Washington, D.C., for petitioner.

Thomas R. Nedrich, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before KERN, GALLAGHER and NEBEKER, Associate Judges.

KERN, Associate Judge:

Petitioner seeks review of an order of the District of Columbia Hackers'· License Appeal Board (Hackers' Board) suspending his Hackers' Identification License for sixty days. At the hearing before the Hackers' Board complainant testified that one evening after dark, he hailed petitioner's cab [1] but found the rear door locked when he attempted to enter it. Petitioner advised complaining witness that he would be transported only if he rode in the front seat. Complainant refused to do this and petitioner drove on without him. Petitioner testified that his uniform policy was to transport single male passengers after dark only in the front seat, as a means of protecting himself from robberies. [2] The Hackers' Board made a single "finding," that petitioner "did refuse to transport a citizen attempting to hire [his] public vehicle," and ordered the suspension of his hacker's license.

## I.

We first sketch the statutory and regulatory scheme under which we must consider this case. The District of Columbia Administrative Procedure Act, D.C.Code 1967, §§ 1–1501 to 1–1510 (Supp. III, 1970), which became effective on October 21, 1969, vests responsibility in this court to review decisions of the Board as well as most other District Government agencies in "contested" cases. *Id.*, § 1–1510. Section 1–1509(e) requires the agency to produce a written decision "accompanied by findings of fact *and* conclusions of law. * * * Findings of fact *and* conclusions of law shall be *supported by* and in accordance with the *reliable, probative, and substantial evidence."* (Emphasis added.)

D.C.Code 1967, Section 47–2331(d) provides for the licensing of taxicabs by their owners. It further authorizes the Public Service Commission (PSC) to *"make and enforce* all such reasonable and usual police regulations as it may deem necessary for the proper conduct, control, and regulation of all vehicles described in this [paragraph]." (Emphasis added.) Pursuant to this section, the PSC has promulgated a set of "Taxicab Regulations," covering fares, taxicab color schemes, construction and equipment, operating rules, etc. Regulation 14–3:117 provides that "[n]o driver of a taxicab shall refuse to transport a passenger while holding his taxicab forth for hire." The only regulation governing the seating of passengers is 14–3:101, which provides:

No taxicab shall be driven when it is so loaded or when there is in the front

---

1. Two cabs had already passed him by although they were empty and appeared to be available for hire.

2. Petitioner testified that he had been robbed on four occasions.

seat such number of persons as to obstruct the view of the driver to the front or sides or to interfere with his control over the taxicab. * * *

Regulation 14–3:141, enacted jointly by the PSC and the former Board of Commissioners of the District of Columbia, fixes a maximum penalty of $300 fine or ninety days imprisonment for violation of "any of these regulations." Nowhere in the Taxicab Regulations is the Hackers' Board authorized to enforce the Regulations.

D.C.Code 1967, Section 47–2331(e), provides for the licensing of taxicab drivers (hackers). Applicants for a license are required to be of "good moral character" and "qualified to operate such vehicle."[3] Section 47–2345(a), applicable to hackers and many other types of licensees covered by the General License Law (Title 47, Chapter 23),[4] provides:

> The Commissioners are further authorized and empowered to make any regulations that may be necessary in furtherance of the purpose of this chapter and *to suspend or revoke any license issued hereunder when, in their judgment,* such is deemed desirable in the interest of *public decency* or the *protection of lives, limbs, health, comfort, and quiet* of the citizens of the District of Columbia, *or for any other reason* they may deem sufficient. (Emphasis added.)

Reorganization Plan No. 3 of 1967, § 402 (394), D.C.Code 1967, Title 1—Appendix (Supp. III, 1970) transferred the power *to make regulations* under Section 47–2345(a) to the District of Columbia Council. All other functions under Section 47–2345(a), including the power to suspend or revoke licenses, were transferred to the Commissioner ("Mayor"),[5] who in turn delegated [6] the power to suspend or revoke hackers' licenses to the Hackers' Board.[7]

## II.

The result of this statutory and regulatory scheme is that:

a. the PSC may make and enforce regulations regarding the operation of taxicabs;

b. the City Council may make regulations for the issuance, suspension, and revocation of hackers' licenses;[8] and

c. the Hackers' Board may suspend or revoke licenses issued to hackers.

▮ Thus, the Hackers' Board, although having no authority to issue its own regulation,[9] is clothed with authority under Section 47–2345(a) to suspend or revoke hackers' licenses whenever "in their judgment" it is desirable (a) "in the interest of public decency", or (b) for the protection of the "lives, limbs, health, comfort and quiet" of the public, or (c) "for any other reason they may deem sufficient." Undoubtedly a licensing agency may be given "broad discretionary power to suspend licenses for *reasonable cause* in order to protect the public health, safety, and morals." 53 C.J.S. Licenses § 43, at 646 (1948) (emphasis added) and cases cited therein.

---

3. The Police Department is responsible for the issuance of the license. District of Columbia Police Regulations Art. 27.

4. *I. e.*, druggists, barbershops, beauty parlors, laundries, etc.

5. Reorganization Plan No. 3 of 1967, § 401, D.C.Code 1967, Title 1—Appendix (Supp. III, 1970).

6. *Id.*, § 305.

7. Organization Order No. 13, Part III, § 1b, D.C.Code 1967, Title 1—Appendix (Supp. III, 1970).

8. We construe the power vested in the City Council to "make any regulations * * * necessary in furtherance of the purpose of this chapter," D.C.Code 1967, § 47–2345(a) to include the power to promulgate specific grounds for suspension or revocation of hackers' licenses.

9. The Hackers' Board does have authority to "recommend to the Commissioner changes in criteria or standards to be applied * * * in the suspension or revocation" of hackers' licenses. *Id.*, Part III, § 1c.

However, there is a point at which a statute "attempts to vest the specified authorities with the arbitrary power of suspension or revocation for whatever to them shall seem 'sufficient and proper cause.' Such provisions are invalid." Ritter v. City of Pontiac, 276 Mich. 416, 267 N.W. 641, 643 (1936). See Czarra v. Board of Medical Supervisors, 25 App.D.C. 443 (1905).[10]

■ We hold that the Hackers' Board may not suspend or revoke a hacker's license unless it concludes after hearing and upon appropriate findings as required by the D.C. Administrative Procedure Act that a valid regulation promulgated by the District of Columbia Council under Section 47–2345(a) prescribing suspension or revocation[11] has been violated, or unless it can show in the record "reliable, probative, and substantial evidence,"[12] supporting *its* own conclusion that suspension or revocation of the particular license will be "in the interest of public decency" or necessary for "the protection of lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia * * *." It cannot suspend or revoke a license "for any other reason they may deem sufficient."

### III.

■ In the instant case, the Hackers' Board appears to have assumed that *any* violation of the PSC Taxicab Regulations *per se* would justify suspension of petitioner's hacker's license. As we have previously indicated, there is no authority in the D.C.Code, the PSC Regulations, or any of the D.C. Government Reorganization materials to permit the Hackers' Board to enforce the PSC's Taxicab Regulations. Only if the District of Columbia Council promulgates a regulation explicitly making the violation of a PSC Taxicab Regulation grounds for suspension or revocation of a license, can *such violation* constitute the basis for a suspension or revocation order by the Hackers' Board. Otherwise, the Hackers' Board may suspend or revoke the license of a hacker who has violated a PSC Taxicab Regulation if such action is necessary on the evidence for the protection of the public's "health" or "comfort" or "in the interest of public decency." The instant case contains no such finding,[13] nor is there probative or substantial evidence in the record upon which such a finding could be made.[14] The order suspending petitioner must therefore be reversed.[15]

10. Doubt about the validity of delegating to the Hackers' Board authority to enforce this broadly-worded statute has previously been expressed. Frazier v. Silver, 185 F.Supp. 625 (D.D.C.1960). *Contra*, Green v. Silver, 207 F.Supp. 133 (D.D.C.1962).

11. It may be desirable to have more particularized criteria for revocation of hackers' licenses than the broadly worded language presently contained in Section 2345(a) of the General License Law.

12. D.C.Code 1967, § 1–1509 (Supp. III, 1970).

13. "The need for reflective findings conjoins with the need for articulated standards, assuring evenhanded application of the law, rather than whim or misplaced zeal." Belsinger v. District of Columbia, U.S.App.D.C. (No. 22,880, decided June 29, 1970) (Leventhal, J., concurring) (slip opinion at 15, footnote omitted).

14. The record does contain speculation by the complainant that the front seat would be less comfortable because a short driver might have the seat pushed forward. Of course, a tall driver might have the seat pushed far back. Such testimony is not "probative." Petitioner's solution seems a more reasonable way of insuring driver safety while providing taxicab service at night than the suggestion made by several members of the Board during the hearing that hackers who are afraid should simply stay off the streets at night.

15. To recap, the Corporation Counsel may prosecute criminally any violation of the PSC Taxicab Regulations; the Hackers'

The petition for review is granted, the order of the Hackers' Board is reversed, and the case is remanded.

*So ordered.*

---

Board may suspend or revoke a hacker's license for any of the reasons set forth in this opinion; the D.C. Council may promulgate regulations allowing the Hackers' Board to suspend or revoke a license for any specific reason "necessary in furtherance of the purpose" of the License Law, which could include violations *per se* of the PSC Taxicab Regulations.