**Theodore H. MILLER, Petitioner,**

**v.**

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.**

**No. 6144.**

District of Columbia Court of Appeals.

Argued March 20, 1972.

Decided Aug. 31, 1972.

---

Roger E. Warin, Washington, D. C., with whom James L. McHugh, Jr., Washington, D. C., was on the brief, for petitioner.

Earl A. Gershenow, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before KERN and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

KERN, Associate Judge:

The Department of Economic Development (Department) denied petitioner a vendor's license to sell costume jewelry which he had learned to handcraft while imprisoned in the Lorton Reformatory.[1] Petitioner, with the approval of prison authorities, had sold his handiwork to customers on the "outside". Once he had obtained a license he planned to sell, on a part-time basis, these products to his "clients." The denial was based solely on his criminal record, which consisted of convictions in the District of Columbia for assault, housebreaking and larceny, and, most recently in 1969, possessing and selling narcotics.[2]

Petitioner appealed the denial of his application to the District of Columbia Board

---

1. D.C.Code 1967, § 47–2336 reads in pertinent part:
 No person shall sell any article of merchandise . . . upon the public streets, or from public space in the District of Columbia, without a license first having been obtained under this section. Persons so licensed shall be considered as venders, whether selling from a fixed location, on foot from house to house, or from a vehicle of any description, and shall pay a license tax of $12 per annum. . . .
 There was evidence that petitioner did not intend to sell door to door.

2. Petitioner, who is 58 years old, also had been convicted of second-degree burglary in Tulsa, Oklahoma in 1936.

of Appeals and Review (the Board).[3] In August 1971, the Board heard testimony from petitioner, his witness—the Director of the Residential Treatment Center for drug offenders operated by the Bureau of Rehabilitation of the National Capitol Area under contract to both the District and federal governments—and, from the Chief of the Department's Business Licenses and Permits Office.

Petitioner's witness testified that while working as a custodial officer for the Department of Corrections he first came into contact with petitioner at Lorton and that, upon being paroled, petitioner commenced work for him at the Treatment Center as a counsellor to drug addicts. The witness further testified that petitioner had

> . . . demonstrated . . . through his initiative and determination and ability that he has been able to change his life style.
>
> He has excelled in his training and work where he has worked for me. . . . Mr. Miller has demonstrated that he is very capable in that line of work [effecting changes in "long-term" addicts].

That witness then read a report on petitioner by his caseworker at the Residential Treatment Center, which described petitioner's progress as "exemplary and beyond reproach in any manner." He pointed out that petitioner was to be employed full time at the Center and expressed the opinion that petitioner had rehabilitated himself.

During testimony at the hearing by the Department's witness, Mr. Green, the following exchange occurred with petitioner's counsel:

> MR. GREEN: My decision [to deny petitioner a vendor's license] came solely

on his record, as reflected from the Federal Bureau of Investigations.

> MR. McHUGH: Do you have some particular standards that you use when reviewing this information for an application?
>
> MR. GREEN: I take into consideration the life[,] crime, health and moral aspects of a person *when I make a determination if they should be granted a license or not.*
>
> MR. McHUGH: Are there any written standards that would make up a guideline that you would operate under?
>
> MR. GREEN: *No, there are no guidelines.*
>
> MR. McHUGH: So this would be just a question of your judgment?
>
> MR. GREEN: *My judgment, my disscression [sic] whether a license should be issued.* (Emphasis added.)

The Board subsequently made findings that petitioner (a) while at Lorton had completed the 11th grade of school and received the equivalent of a high-school diploma, (b) had been receiving on-the-job training as a member of the New Careers Program sponsored by the Bureau, (c) is taking courses at the Washington Technical Institute leading to a degree, and, (d) had not been rehabilitated as of the time of his *1969* narcotics conviction. The Board concluded therefrom that petitioner was not in 1971 "sufficiently rehabilitated to warrant granting of the license."

Petitioner contends (1) that neither the particular statute governing vendors' licenses [4] nor the general statute governing all

---

3. The Board had jurisdiction over appeals taken from decisions made by the Department of Licenses and Inspections with respect to denial, suspension, or revocation of a license, permit or certificate, "Organization Order No. 112," Appendix to Title 1 of D.C.Code 1967, p. 102 (Supp. V, 1972).

4. D.C.Code 1967, § 47–2336 reads in pertinent part:
 The commissioners of the District of Columbia are hereby authorized and empowered to make, modify, and enforce necessary regulations governing the conduct upon the public streets and public spaces of venders licensed

business licenses in the District [5] empowers the Commissioner's delegatee [6] to *deny* the license application, (2) that he was denied due process in this case because neither the pertinent statutes nor any administrative regulations spelled out standards by which an application for a vendor's license could be denied, and (3) that the evidence before the Board did not support its conclusion that he was not sufficiently rehabilitated as of August *1971* to warrant granting him a vendor's license.

Corporation Counsel responds that the power to deny an application for a vendor's license because of an applicant's prior criminal record is a necessary concomitant of (i) the express power under Section 47–2336 to license vendors and/or (ii) the general power under Section 47–2345(a) to suspend or revoke upon public health and safety grounds the many types of business licenses required by the Code.[7]

■ The government's position that its power to deny flows from its power to license vendors under Section 27–2336 is not supported by the case law or legislative

history, Busey v. District of Columbia, 75 U.S.App.D.C. 352, 354–355, 129 F.2d 24, 26–27 (1942), vacated, 319 U.S. 579, rev'd on other grounds, 78 U.S.App.D.C. 189, 138 F.2d 592 (1943); OD v. Wilson, 323 F. Supp. 76, 78 n. 5 (D.D.C.1971). Turning to its alternative argument, it has been held that the explicit power to suspend or revoke a license already issued implies the power to deny an initial license application because of public health and safety considerations, provided these considerations are consistent with the purposes of the licensing statute, Arrow Express Forwarding Co. v. Iowa State Commerce Commission, 256 Iowa 1088, 130 N.W.2d 451 (1964); Barton Trucking Corp. v. O'Connell, 7 N.Y.2d 299, 306, 197 N.Y.S.2d 138, 165 N.E.2d 163, 166 (1959). *See generally* 9 E. McQuillin, Municipal Corporations § 26.46 (3d ed. 1964); 53 C.J.S. Licenses § 38 (1948).[8]

■ We recognize that it would be pointless for licensing authorities to have no alternative but to grant a license to *any* applicant because their authority to deny was not expressly provided for but then be able immediately thereafter to suspend or re-

hereunder, including the power to locate the places where licensed venders on the public streets and public spaces shall stand, and to change them as often as the public interests require.

5. D.C.Code 1967, § 47–2345(a) reads: The Commissioners are further authorized and empowered to make any regulations that may be necessary in furtherance of the purpose of this chapter and *to suspend or revoke any license* issued hereunder when, in their judgment, such is deemed desirable in the interest of public decency or the protection of lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia, or for any other reason they may deem sufficient. (Emphasis added.)

6. Under "Reorganization Plan No. 3, 1967," Appendix to Title 1 of D.C.Code 1967, § 402 (386) (394) (Supp. V, 1972), the power to enact regulations pursuant to D.C.Code 1967, § 47–2336 and § 47–2345(a) was transferred from the Board of Commissioners to the City Council. Enforcement of the provisions

of D.C.Code 1967, § 47–2336 and § 47–2345(a) and the regulations enacted thereunder was transferred from the Board of Commissioners to the Commissioner, "Reorganization Plan No. 3, 1967," Appendix to Title 1 of D.C.Code 1967, § 402 (Supp. V, 1972), who had delegated that responsibility to the Department of Licenses and Inspections, a subdivision of the Department of Economic Development, "Organization Action," Appendix to Title 1 of the D.C.Code 1967, p. 108 (Supp. V, 1972).

7. *See generally* D.C.Code 1967, § 47–2301 et seq.

8. For example, in Barton Trucking Corp. v. O'Connell, 7 N.Y.2d 299, 313, 197 N.Y.S. 2d 138, 165 N.E.2d 163, 170 (1959), a past conviction for extortion in the garment trucking industry was a reasonable basis for the denial of a trucking license because the licensing statute had, as one of its purposes, the prevention of price gouging in the garment industry. *See also* Brown v. Murphy, 34 Misc.2d 151, 158, 224 N.Y.2d 423, 430 (1962).

voke any such licenses for public health and safety considerations, which had existed at the time of the original application. We conclude that the general power under Section 47–2345(a) to revoke or suspend business licenses reasonably implies the power to deny initial license applications.

We turn to petitioner's next argument: That without criteria or standards in a statute or regulations, the licensing authority's power to deny becomes a matter of individual "judgment" which violates due process. To this argument, Corporation Counsel responds that the purpose of requiring a vendor to have a license is to protect the public from dishonest and/or dangerous persons and that in this case petitioner's extensive criminal record justified the denial. Corporation Counsel recently argued, however, to another court in this jurisdiction that the purpose of the vendor's licensing statute, Section 47–2336, is to regulate the traffic of street vendors (thus making an applicant's criminal history irrelevant), OD v. Wilson, *supra*. The United States Court of Appeals for the District of Columbia Circuit has opined that the purpose of the predecessor of Section 47–2336 (which was almost identical in language), was to identify and protect street vendors themselves, Busey v. District of Columbia, *supra*. Thus, it is not at all clear that the purpose of requiring the licensing of vendors is to protect the public.

We note, too, that Section 47–2345(a), from which we have implied the Department's power to deny licenses, governs the licensing of a wide spectrum of business activity, ranging from abattoirs to undertakers. Unless there are some standards relating the prior conduct of an applicant to the *particular* business activity for which he seeks a license,[9] the power to deny a license inevitably becomes an arbitrary, and

therefore unlawful, exercise of judgment by one official, a graphic example of which is so clearly revealed by the record in this case. *See* Silco Automatic Vending Co. v. Puma, 108 N.J.Super. 427, 261 A.2d 674 (1970); Amara v. Town of Daytona Beach Shores, 181 So.2d 722, 724–725 (Fla.Dist. Ct.App.1966); Kaufman v. Taxicab Bureau, 236 Md. 476, 484, 204 A.2d 521, 525 (1964); Brown v. Murphy, 34 Misc.2d 151, 224 N.Y.S.2d 423 (1962); Weiner v. Borough of Stratford, Camden County, 15 N.J. 295, 104 A.2d 659 (1954).

We commend to the specific attention of the Council the need to clarify the requirements for business licenses by adopting appropriate regulations which, among other things, will define the public health and safety dangers posed by the past histories of the license applicants with respect to each particular type of license, so that the danger of arbitrary administrative action based upon unarticulated and unannounced standards is removed and the possibility of constitutional assault upon the general licensing statute is blunted. The Council has responsibility from Congress pursuant to Section 47–2345(a) to protect the "lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia" and authority to adopt regulations to meet its responsibility. Unless the Council exercises that authority it would appear not to meet its responsibility. We note the dissenting opinion in Busey v. District of Columbia, 75 U.S.App.D.C. 352, 361, 129 F.2d 24, 33 (1942), vacated 319 U.S. 579, 63 S.Ct. 1277, 87 L.Ed. 1598, rev'd on other grounds, 78 U.S.App.D.C. 189, 138 F.2d 592 (1943), by Judge Ruttledge which describes the purpose of the predecessor of Section 47–2345(a) as enabling "the Commissioners to make and apply regulations *especially adapted* to the varied businesses required to be licensed." (Emphasis added.) This court has also indicated a need for regula-

---

9. [R]estriction of licenses and permits to persons of good character and reputation, fitness for the business or activity, and other reasonable qualifications, is valid, where the restriction has a reasonable relationship to the protection of the public health, safety, welfare or morals in view of the nature of the occupation or activity that is licensed. 9 E. McQuillin, Municipal Corporations § 26.46 (3d ed. 1964).

tions issued under Section 47–2345(a) which relate the general standards contained therein to the individual types of business licenses to which it applies, Proctor v. Hackers' Board, D.C.App., 268 A.2d 267, 270 n. 11 (1970).

In addition, the Department's apparent policy of denying vendors' licenses to ex-convicts appears at cross-purposes with what other District government agencies are seeking and may frustrate entirely the legislative goal of vocational rehabilitation in our penal institutions. So, too, it may violate a general policy against unreasonable restrictions upon entrance into non-professional "common callings," such as street vending. *See generally* Brewster v. Kinlein, D.C.App., 209 A.2d 788, 789 (1965); Brown v. Murphy, *supra*; Tanner v. DeSapio, 2 Misc.2d 130, 134, 150 N.Y.S. 2d 640, 644–645 (1956).

▆ We turn to petitioner's final contention that the evidence in this case does not support the Board's conclusion that he has not been rehabilitated enough to warrant receiving a license to sell handcrafted jewelry. The applicable statute governing our review of administrative agency orders obliges us to set aside any conclusions "unsupported by substantial evidence in the record." D.C.Code 1967, § 1–1510(3) (E) (Supp. V, 1972). In this case, the only finding by the Board relevant to its conclusion that petitioner is not *now* rehabilitated was its finding that petitioner had not been rehabilitated in *1969*. The evidence in the record is to the effect that petitioner has recently discovered a mission, *i. e.,* counselling addicts; a skill, *i. e.,* handicraft; and an opportunity, *i. e.,* full-time work at the Treatment Center and selling his handiwork to his clientele, which, when taken all together, provide him with a strong incentive finally to eschew a life of crime. Petitioner presented a witness who was an experienced corrections

officer and had known petitioner for a period of time and who testified in some detail as to why in his judgment petitioner had been rehabilitated. Upon this state of the record, and with no evidence from the Department except his record of prior criminal convictions, we find no evidentiary support for the Board's conclusion and its order cannot stand.

In view of our holding, that there was no substantial evidence in the record to support the Board's conclusion that petitioner was not rehabilitated at the time he applied for the vendor's license, we do not decide whether due process was violated in this case because of the lack of regulations fixing standards for denying license applications under authority of Section 47–2345(a). However, as we have indicated above, we have serious concern about the constitutionality of utilizing Section 47–2345(a) to deny applications for the various business activities encompassed generally in Chapter 23 of Title 47 of the D.C. Code unless appropriate regulations are issued by the City Council which will define the public health and safety dangers posed with respect to each particular activity by the past histories of the license applicants.

We grant the petition, reverse the Board's order and remand the case with directions to grant the license to petitioner.[10]

Reversed and remanded.

HOOD, Chief Judge, Retired (dissenting):

I agree with the majority that the power to revoke or suspend a license reasonably implies the power to initially deny a license; but I disagree with the majority's conclusion that the license in the instant case was illegally denied.

In considering the case two matters should be made clear. First, this is not the

---

10. The Department would have authority in the future, if proper regulations are adopted relating past histories of applicants to the particular licenses applied

for, to suspend or revoke licenses already issued or deny licenses sought, provided, of course, there is sufficient evidence to support that action.

case of a former narcotic addict seeking employment as an aid to continuing his non-addiction. According to one of his witnesses, appellant "has never been a user of drugs", but the record shows three convictions (1963, 1965 and 1969) of appellant for narcotic violations. He was a seller of narcotics. His witness spoke of appellant's "previous involvement in the drug culture", and testified appellant was "primarily" a dope seller. Appellant himself, referring to one of his convictions, testified "I did sell narcotics and was caught".

Second, this is not the case of a former convict seeking employment in order to support himself in a legitimate manner. At the time of the hearing he was employed by and receiving training at the Residential Treatment Center, and upon completion of his training was to be employed full time at the Center at a salary of $7,140. The making and sale of jewelry and the purchase and resale of women's clothing would be an "outlet" for "leisure" and "unwinding", "sort of a hobby", to be indulged in at night and on Saturdays and Sundays. Although the license he sought would enable him to sell on the streets and from door to door, he disclaimed any intention of selling his "jewelry door to door or the clothing on the street." He simply wished to "keep his present clientele".

Thus the question before the Department and Board was whether to issue a license to sell on the streets and from door to door to petitioner, a former narcotic seller with a record of convictions of second-degree burglary and of housebreaking and larceny. The Department denied the license and the Board affirmed the denial, and in my opinion there is no legal ground on which this court can reverse that action.

The majority say the purpose of the Act is not clear. I disagree. The license law is "primarily a police measure",[1] and in my opinion falls within the classification referred to in Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 116, 63 S.Ct 870, 876, 87 L.Ed. 1292 (1943) as a regulatory measure imposing a nominal fee "to defray the expense of protecting those on the streets and at home against the abuse of solicitors."

The majority complain there are no established standards for denying a license. I think standards are established by D.C. Code 1967, § 47–2345(a) when it refers to the "protection of lives, limbs, health, comfort, and quiet" of the citizens of the District. Those standards are general but in dealing with the character of a person fit to be entrusted with a license, standards necessarily must be general.

I see nothing arbitrary in the denial of the petitioner's license. It is true that the Chief of the Licenses and Permits Division said he used his discretion in granting or denying a license but he qualified this by saying he exercised his judgment. In effect he testified he reviewed petitioner's record and in his considered judgment petitioner was not qualified for the type of license he sought.

The majority opinion lays some stress on the finding by the Board that the petitioner was not rehabilitated in 1969. This finding was occasioned by testimony on petitioner's behalf that in 1969 (the time of his third narcotic conviction) there were certain "negative factors" in his life, that he was then "not mature", but that he had since that time "a more positive attitude". The question then before the Board was whether there was sufficient evidence of rehabilitation after 1969, especially in view of the opinion of petitioner's own witness that "without a vendor's license, there would be a chance of him [petitioner] falling back into his old habits." If a vendor's license was necessary to prevent petitioner from reverting to his former criminal activity, his rehabilitation was not very firmly established.

In summary I find from the record no arbitrary action by the authorities, and I

1. Busey v. District of Columbia, 75 U.S.App.D.C. 352, 354, 129 F.2d 24, 26 (1942).

find no basis in the record for the majority's reference to an "apparent policy of denying vendors' licenses to ex-convicts". In my opinion the statute furnished general but adequate guidelines, and the Department pursuant to those guidelines considered petitioner's record and in its judgment concluded that in the interest of protecting the public the license should not issue. The correctness of that judgment is not our concern. Such judgment is entrusted to the administrative agencies and we have no right to disturb that judgment if supported by substantial evidence. In my opinion this court exceeds its authority when it orders the issuance of the license.