**Barbara WOODS, Petitioner,**

v.

**DISTRICT OF COLUMBIA NURSES' EXAMINING BOARD, Respondent.**

Nos. 80–240, 80–886.

District of Columbia Court of Appeals.

Argued April 7, 1981.
Decided Oct. 9, 1981.

Robert I. Berlow, Washington, D. C., Neighborhood Legal Services Program, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEWMAN, Chief Judge, and KERN and FERREN, Associate Judges.

NEWMAN, Chief Judge:

Petitioner seeks review of a decision of the District of Columbia Nurses' Examining Board revoking her license as a Registered Nurse (R.N.) (No. 80–240). She contends that this decision, which was based on conduct occurring in Maryland, and for which her Maryland R.N. license was revoked, deprived her of due process. She further asserts that the Board's subsequent denial of her application for reinstatement was constitutionally flawed (No. 80–886). We agree with petitioner's contentions concerning the reinstatement proceedings and thus we need not resolve the other issues presented by this appeal. We reverse and remand to the Board.

I

Petitioner was a Registered Nurse licensed to practice in both Maryland and the District of Columbia. She was employed as a night shift supervising nurse at the Wildwood Health Care Center, a 180-bed nursing home facility in Bethesda, Maryland. In early 1977, her coworkers began to complain about her performance. One nurse reported that a patient had not received her insulin for several days, although petitioner

had made entries in the patient's records indicating that insulin had been administered. Petitioner was also frequently observed sleeping while on duty, and another nurse reported that petitioner had failed to check a patient who had allegedly fallen. Petitioner received increasing pressure to resign. On February 28, 1977, the Administrator of Wildwood formally requested her resignation. When she refused, she was dismissed on March 15. Subsequently, the Maryland Board of Examiners of Nursing began proceedings to revoke her license.

The Maryland Board originally set a hearing for November 29, 1977, but then rescheduled it for February 28, 1978, at 9:00 a. m., for the sole convenience of the Board. On the morning of February 28, the Board telephoned petitioner's attorney and informed him that the hearing would be postponed again, until 2:00 that afternoon. The Board knew, however, that petitioner's counsel had a prior court commitment that would prevent him from representing her at the 2:00 hearing. Consequently she was forced to appear pro se at the Maryland hearing, because the Board refused to reschedule the hearing a third time in order to permit her attorney to attend.

In her testimony before the Maryland Board, petitioner denied most of the specific charges against her, attributing her difficulties at Wildwood to institutional crises,[1] interpersonal tensions, and a lack of communication. On March 28, 1978, the Maryland Board issued its findings and conclusions. The Board found petitioner guilty on certain of the charges and revoked her license.

In April, 1978, the District of Columbia Nurses' Examining Board received a copy of the Maryland revocation order and findings. On May 3, the Board voted to initiate disciplinary action. The Corporation Counsel's office prepared a letter of charges dated September 13, 1978, based upon petitioner's conduct in Maryland. The letter stated that the Board was proposing suspension or revocation of her license pursuant to D.C.Code 1978 Supp., § 2–407, for misconduct or professional incapacitation. It also stated that she was entitled to a hearing if requested within twenty days, and that she had the right to be represented by counsel and to present all relevant evidence. Petitioner did not receive this letter of charges, but she did receive a second copy, mailed November 8, 1978. She requested a hearing by letter dated November 25, in which she also informed the Board that the Maryland decision was being appealed.

A hearing date was set for February 14, 1979. Notice of this hearing, dated December 15, 1978, was served on petitioner's sixteen-year-old daughter on January 19, 1979. The notice also informed petitioner that the Board would issue subpoenas for any witnesses that she desired. Accordingly, petitioner wrote to the Board on February 8 and listed the names and addresses of seven witnesses that she requested to be summoned to the hearing.

The February 14 hearing was postponed until March 22, 1979. Petitioner was informed of the new date by telephone on February 27. She was also advised that for each witness she must submit a witness fee of $30 plus transportation costs by March 6. On March 4, petitioner mailed the witness fees for two of her witnesses: Barbara Lowell, the former Director of Nursing of Wildwood, and Theresa Kollapallil, a former employee of Wildwood who was familiar with the incident in which the patient had allegedly fallen. Subpoenas were issued for both these witnesses on March 15, but neither witness appeared. Ms. Lowell's

---

1. Wildwood had changed directors three times during the year preceding the Maryland hearing. In early 1977, when Ms. Woods was dismissed, Wildwood was under investigation by the Immigration and Naturalization Service. This investigation led to the arrest of 25 employees as illegal aliens. *See* Washington Post, May 5, 1978, at C9, col. 4. In May, 1978, Wildwood was threatened with closure by Montgomery County officials, as a result of unsanitary conditions, inadequate staffing, and a failure to keep records of medication administered to patients. *See id.*, Aug. 10, 1978, at C1, col. 6; *id.*, May 11, 1978, at B1, col. 2; *id.*, May 5, 1978, at C1, col. 2.

attorney telephoned the Board the day before the hearing and stated that the witness had "no desire to attend the hearing." Ms. Kollapallil did not receive her subpoena until several hours *after* the hearing was over. No further efforts were made to secure the presence of these or any other witnesses. Petitioner appeared pro se at the District of Columbia hearing.[2]

On May 25, 1979, two months after the hearing, the Board issued its findings and conclusions. Petitioner did not receive actual notice of the Board's decision, however until five months later, on October 27, 1979. She requested reconsideration of the Board's decision on October 29 by telephone. The same day, she filed a petition for review in this court (No. 79–1087).

Meanwhile, Ms. Woods had petitioned for reinstatement in Maryland. After a hearing on October 23, 1979, the Maryland Board granted her petition on November 9, based on her recent satisfactory employment performance as a psychiatric nurse at the Washington Hospital Center in the District of Columbia. She was placed on probation for one year.

On January 28, 1980, this court remanded petitioner's case (No. 79–1087) to the Board, because the Board's order of May 25, 1979 had failed to advise the petitioner of her right to appeal and of the time limit for such appeal. Petitioner then filed with the Board a Motion for Stay of Order of Revocation and for Temporary Reinstatement, based on the fact that her license had since been reinstated in Maryland. On February 6, 1980, the Board denied the motion and voted to uphold its previous decision. The Board reissued its May 25 findings and conclusions on March 4, 1980, with an additional sentence at the end describing the appeal procedure. Ms. Woods filed a timely petition for review in this court (No. 80–240.)

On June 30, 1980, petitioner and her attorney attended an informal meeting with the Board president, an Assistant Corporation Counsel, and the Board's staff nurse specialist. The Board informed petitioner that in order to obtain a new license she should simply file a new application along with the filing fee. Accordingly, on July 9, 1980, she applied for reinstatement. The Board denied her application without a hearing, by letter dated July 31, 1980. Petitioner timely sought review, (No. 80–886), and this case was subsequently consolidated with No. 80–240.

## II

### A. *Right to a Hearing*

The regulations governing occupational and professional licensing boards specifically deny the right to a hearing, with respect to all applicants for reinstatement following a revocation. 5 DD DCRR § 20.1. Petitioner asserts that she is entitled to a hearing under the District of Columbia Administrative Procedure Act (DCAPA), as well as the due process clause of the Constitution. We agree.

The right to practice one's chosen profession is a liberty interest for purposes of the due process clause; *some* kind of hearing must be afforded before an individual can be denied the right to practice his or her profession.[3] *See Willner v. Committee on Character and Fitness,* 373 U.S. 96, 102–03, 83 S.Ct. 1175, 1179–1180, 10 L.Ed.2d 224 (1963); *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–756, 1 L.Ed.2d 796 (1957); *Meyer v. Nebraska,* 262 U.S. 390, 399–400, 43 S.Ct. 625, 626–627, 67 L.Ed. 1042 (1923); *Dent v. West Virginia,* 129 U.S. 114, 121–23, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889); *Shaw v. Hospital Authority,* 507 F.2d 625, 628 (5th Cir. 1975); *cf. Barry v. Barchi,* 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979) (property interest in horse trainer's license entitled holder to a prompt postsuspension hearing).

---

2. Petitioner does not contend, nor do we conclude, that her appearance pro se at the District of Columbia hearing was anything less than completely voluntary.

3. We note that initial license applicants and renewal applicants are accorded a hearing before denial. 5 DD DCRR § 20.1(a)–(c), (h).

Denial of petitioner's application for reinstatement effectively precluded her from practicing her profession in the District of Columbia just as much as did the initial revocation of her license. Thus, the due process clause of the fifth amendment guarantees petitioner a right to a hearing on her application for reinstatement.

Petitioner's application also falls within the definition of a "contested case" under the DCAPA, D.C.Code 1978 Supp., § 1–1502(8), because a hearing is required by the Constitution, and because the Board's action was "concerned basically with weighing particular information and arriving at a decision directed at the rights of specific parties." *Schneider v. District of Columbia Zoning Commission*, D.C.App., 383 A.2d 324, 326 (1978) (*quoting Chevy Chase Citizens Association v. District of Columbia Council*, D.C.App., 327 A.2d 310, 313 (1974)). Accordingly, petitioner is entitled to the specific procedural safeguards guaranteed by the DCAPA for contested cases. D.C.Code 1978 Supp., § 1–1509. Since the Board's regulations deprived petitioner of these procedural rights, the summary denial of her application cannot stand.

### B. *Vagueness*

Petitioner also contends that the regulations governing the reinstatement process are void for vagueness. We agree.

■ The Council of the District of Columbia has broad authority to regulate business and professional licenses, and to promulgate regulations implementing these licensing powers. *See* D.C.Code 1978 Supp., § 47–2344; D.C.Code 1973, § 47–2345(a). *See generally Proctor v. Hackers' Board*, D.C.App., 268 A.2d 267, 296 (1970); *Savage v. District of Columbia*, D.C.App., 54 A.2d 562, 564–65 (1947). Pursuant to its licensing authority, the Council in 1972 issued a set of regulations, 5 DD DCRR §§ 1.1–60.4, applicable to twenty-one occupational and professional licensing boards, including the Nurses' Examining Board, *id.* § 1.1(b). These regulations in turn delegate to the various licensing boards the power to revoke or suspend licenses for any reason permitted by law or regulation governing the profession.[4] *Id.* § 1.2. In addition, the boards are authorized to reinstate licenses, in accordance with the following provision:

60.5 Reconsideration or Reinstatement

A person whose application for a license or renewal of a license has been denied or whose license has been cancelled, suspended, or revoked by the Board may, by filing a new application accompanied by the proper fee, request the Board to reconsider the matter. Upon showing of *cause satisfactory to it*, the Board *may* issue the license or renewal of license for which application has been made. [5 DD DCRR § 60.4 (emphasis added).][5]

■ Unduly vague regulations and statutes are constitutionally inadequate for two reasons. First, they deprive the individual of notice as to what conduct will be considered proscribed or required, or otherwise relevant to the agency's decision. Second, vague standards encourage arbitrary and

---

4. This provision is drawn from the statutory grant of authority to the Mayor to suspend or revoke licenses "when, in his judgment, such is deemed desirable in the interest of public decency or the protection of lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia, or for any other reason he may deem sufficient," D.C.Code 1973, § 47–2345(a), including failure of the licensee to comply with the laws or regulations applicable to the licensed profession, *id.* § 47–2345(b). In this instance, the laws governing the profession are found in D.C.Code 1973 & 1978 Supp., §§ 2–401 to –410, by which the Nurses' Examining Board is authorized to suspend or revoke Registered Nurse licenses on grounds of misconduct or professional incapacitation, as was charged

here. *Id.* § 2–407. The Council does have the power to articulate more specific grounds for suspension or revocation, as this is inherent in its power to enact licensing regulations. *See Proctor v. Hackers' Board, supra* at 269 n.8.

5. The Board's power to reinstate licenses is derived specifically from D.C.Code 1973, § 2–406, which states in part, "The by-laws adopted by the Nurses' Examining Board *shall define* the *conditions* upon which the registration of a nurse may be restored." (Emphasis added.) By failing to define those conditions, the Board has failed to carry out the mandate of the statute.

possibly discriminatory decisions. Specific standards or guidelines operate to protect individuals against the injustice that might otherwise result from the arbitrary exercise of unbridled administrative discretion. *See generally Papachristou v. City of Jacksonville,* 405 U.S. 156, 162–64, 92 S.Ct. 839, 843–844, 31 L.Ed.2d 110 (1972); 1 *K. Davis, Administrative Law Treatise* §§ 3:9, 3:15 (2d ed. 1978); Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 *U.Pa.L.Rev.* 67 (1960). This court has recognized "the danger of arbitrary administrative action based upon unarticulated and unannounced standards . . . ." *Miller v. District of Columbia Board of Appeals and Review,* D.C.App., 294 A.2d 365, 369 (1972). "Unless there are some standards relating the prior conduct of an applicant to the *particular* . . . activity for which [s]he seeks a license, the power to deny a license inevitably becomes an arbitrary, and therefore, unlawful exercise of judgment by one official . . . ." *Id.* (footnote omitted; emphasis in original). *See also Lewis v. District of Columbia Commission on Licensure to Practice the Healing Art,* D.C.App., 385 A.2d 1148, 1152–53 (1978); *Proctor v. Hackers' Board, supra* at 270; *White v. Roughton,* 530 F.2d 750, 754 (7th Cir. 1976); *Holmes v. New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir. 1968); *Harnett v. Board of Zoning, Subdivision and Building Appeals,* 350 F.Supp. 1159, 1161 (D.V.I. 1972); *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 198–201, 292 A.2d 277, 282–83 (1972). We hold that the regulation governing the Board's reinstatement decisions suffers from these defects and is therefore void for vagueness.

 The test for determining unconstitutional vagueness is whether the language of the regulation is so vague, with respect to what conduct is either proscribed or required, that persons of common intelligence must necessarily guess at its meaning. *See Papachristou v. City of Jacksonville, supra* 405 U.S. at 162–63, 92 S.Ct. at 843–844; *Lewis v. District of Columbia Commission on Licensure to Practice the Healing Art, supra* at 1153. It is difficult to imagine a regulation that would require more guess-

work on the part of an applicant. Section 60.4 contains *no clues* as to what grounds the Board might consider "satisfactory" or what criteria might be relevant to the Board's decision. The Board is apparently free to decide what is satisfactory on a purely subjective, ad hoc basis. And even if "satisfactory" cause is shown, there is nothing in the reinstatement regulation that *requires* the Board to reissue a license; the regulation merely states that the Board *"may"* issue the license if it chooses to do so. This language virtually invites arbitrary decisionmaking. *See Proctor v. Hackers' Board, supra* at 269–70 (Board may not suspend or revoke licenses "for any . . . reason [the Board] may deem sufficient.")

In the *Lewis* case, *supra,* the Commission on Licensure to Practice the Healing Art had suspended Dr. Lewis' license on the ground that he had engaged in "misconduct" by failing to provide adequate supervision of employees administering acupuncture. This court held that the Commission had deprived Dr. Lewis of due process in suspending his license, because it failed to promulgate standards defining the term "misconduct," and thus provided no notice of what conduct was prohibited. *Id.* at 1151–53. *See also Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. at 198–201, 292 A.2d at 282–83 (revocation or suspension of pharmacist's license on ground not specifically listed in statute held an impermissibly vague application of statute). Similarly, the Board's failure here to prescribe any criteria for reinstatement decisions is fatal to its attempt to deny petitioner's reinstatement.

Another defect inherent in § 60.4 is that it confuses the concepts of "reconsideration," which is essentially backward-looking, and "reinstatement," which is essentially forward-looking. Reconsideration posits that the original decision (here, revocation) may have been erroneous. Reinstatement, on the other hand, assumes that the Board's original sanction was properly imposed, but recognizes that, subsequent to the conduct for which she was disciplined, the applicant has rehabilitated herself professionally.

See, e. g., Miller v. District of Columbia Board of Appeals and Review, supra at 370.

The confusion engendered by § 60.4 and its failure to distinguish between these two concepts is readily apparent upon examining the Board's decision in this case. Petitioner applied for reinstatement, yet the Board treated her application as one for reconsideration, denying her petition on the ground that, because of the "nature of the charges" leading to revocation, the Board's "original decision to revoke, rather than to suspend, [her] license was appropriate." Petitioner contends that the Board acted improperly in looking to its original decision. Rather, she claims, the Board should have looked to events that occurred *after* the conduct for which her license was revoked, such as her satisfactory employment performance and her subsequent reinstatement in Maryland. We agree.[6] *See id.* (Board's conclusion that vendor's license applicant is not now rehabilitated cannot be supported by finding that he was convicted for narcotics possession two years earlier; Board must consider evidence of conduct *subsequent* to conviction). The Board's failure to consider factors that should have been relevant serves to emphasize and illustrate the problem created when an agency is left without guidance as to its decision-making.

In sum, the Board's denial of petitioner's application for reinstatement runs afoul of the due process clause on two grounds. First, petitioner was deprived of her constitutional right to a hearing on her application. But even a hearing would not cure the defects in the Board's decision, for we hold that § 60.4 of the Occupational and Professional Licensing Regulations is so vague as to deprive petitioner of due process because she was denied fair notice of

the Board's criteria governing reinstatement. Without articulated standards to guide the Board's discretion, any hearing would be meaningless; petitioner would have no notice of what she would be required to prove. *See White v. Roughton, supra* at 754. Until such regulations are adopted, clearly setting forth the criteria upon which the Board will base its reinstatement decisions,[7] any decision by the Board is inherently arbitrary, and thus the Board has no grounds upon which it may validly deny petitioner's application.[8]

*Reversed and remanded for proceedings not inconsistent with this opinion.*

KERN, Associate Judge, dissenting:

I think we should decide the petition for review in No. 8–240 and that we should remand the record in No. 80–886, given the uncertain nature of the agency action we are asked there to review and the restraint always to be exercised by a reviewing court to avoid deciding cases on the basis of application of the Constitution if alternative grounds for decision exist—as is the case here.

The petition for review in this court in No. 80–240, which the majority disdains to decide, challenges the correctness of the respondent Board's revocation of petitioner's license as a registered nurse in the District of Columbia. I believe we have an obligation to the parties (and the community) to decide this particular petition.[1] Upon review of the record of proceedings before the Board I am satisfied that its notice to petitioner was sufficient, the conduct of its hearing was proper and its conclusion to revoke her license upon the basis of the revocation of her license by Maryland, after hearing her version of the underlying inci-

---

6. At any rate, the Board's treatment of petitioner's application as one for reconsideration makes no sense, as she had three and one-half months earlier petitioned this court for review of the Board's original decision. Moreover, she had already applied for reconsideration, and the Board had denied that request four months earlier.

7. We express no opinion as to the vagueness of the regulations governing the revocation or suspension of licenses.

8. Our decision, of course, applies to all occupational and professional licensing boards covered by Title 5 DD.

1. Petitioner devotes 30 pages of her brief to this petition.

dents, was supported by substantial evidence and not flawed by an error of law.[2] Accordingly, I would deny the petition in No. 80–240.

The petition for review in No. 80–886 challenges a ruling by the Board on July 31, 1980, the meaning of which is not at all clear. The record is sparse, to say the least. It consists of a standard form of Application for Registration as a nurse, prepared, but not completely, and executed on July 9th by petitioner; a one-page Processing Check List that is incomplete; and, a two-paragraph letter by the Board to petitioner under date of July 31, 1980.

Petitioner asserts as the keystone to her argument in No. 80–886 that the Board's July 31st letter constitutes an order of denial of an application by her for *reinstatement* of her license, but candidly and correctly acknowledges "the statute under which the Nurses' Examining Board operated . . . . makes no provision for reinstatement or relicensing after revocation." (Pet. for Review, p. 2.)[3]

Moreover, the Application submitted by petitioner in July 1980 to the Board omits any reference at all to an event occurring subsequent to the Board's 1979 decision to revoke her license and upon which she now lays great stress in her brief: a probationary reinstatement by Maryland. Instead, petitioner attached to this form Application for Registration the transcript and record of the prior revocation proceeding. In sum, petitioner by the attachment to her Application appears to have been asking the Board to reexamine its 1979 revocation decision rather than to address post-decision developments.

In its letter of July 31st, the Board states, among others, that it "considered the na-

ture of the charges upon which the Board revoked your license . . . . It is the unanimous decision of the Board that its original decision to revoke, rather than to suspend, your licensure was appropriate." This suggests that the Board *reconsidered* on July 31st its earlier decision to revoke petitioner's license rather than merely to suspend and concluded, upon the basis of the gravity of the petitioner's misconduct, *viz.*, mistreatment of patients, to reaffirm its decision of revocation. While the Board's letter also does refer to petitioner's "application for relicensure," that application is not so denominated and refers only to the Board's prior hearing which led to the revocation of her license.[4]

In short, the record before us in No. 80–886 leaves unclear the following:

Whether petitioner was seeking by her Application of July 9, 1980 (more than one year after the Board's finding of misconduct on her part and conclusion to revoke her license) to have the Board *reconsider* its earlier revocation, the proceedings of which she attached to that application, or whether petitioner, one year having passed and her license having been restored on condition in Maryland, was seeking *anew* to be licensed by the Board; and,

Whether the Board treated her Application as seeking reconsideration and was standing by its original decision to revoke, or whether the Board was treating her Application as an application for relicensure and was denying it out of hand without a hearing, which would be clearly improper.

How the above questions are answered determines the appropriate scope of review by this court. Accordingly, I would remand No. 80–886 to the Board for further consideration appropriate to the changed circum-

---

**2.** I reject petitioner's contention that the Maryland proceeding of revocation was deficient and hence its findings were unavailable for use by the Board. *See Nasem v. Brown*, 193 U.S. App.D.C. 416, 421, 595 F.2d 801, 806 (1979). Contrary to petitioner's assertions, the record in my view reflects a full and fair hearing in Maryland and a "final" order by the Maryland Board.

**3.** When read in context, D.C.Code 1973, § 2–406, upon which the majority relies (At 373,

note 5), for the authority of the Board to reinstate licenses that have been revoked is not applicable to the situation here since petitioner had not allowed her registration to expire and therefore was not seeking to have it restored after expiration.

**4.** Petitioner in her Petition for Review refers to informal advice she received from the Board "to file a new application," but this is not a matter of record.

stances.[5] *Miller v. District of Columbia Board of Appeals and Review,* D.C.App., 294 A.2d 365 (1972).

I dissent.

5. It is now more than two years since the Board determined to revoke petitioner's license and she has resumed nursing at least on a probationary basis.