PLOTKIN, Judge.
Plaintiff, Louis A. Ensenat, M.D., appeals the trial court’s denial of his petition for writ of mandamus directed to the Louisiana State Board of Medical Examiners (the “Board”), requesting unrestricted reinstatement of his medical license, or alternatively, to conduct a hearing on his application to determine the criteria for reinstatement.

Facts:

On January 14,1971, the Board issued an order suspending the medical license of Dr. Ensenat for three years. That suspension was itself suspended by the same order, subject to reinstatement upon any finding of violation of the Medical Practice Act by Dr. Ensenat during the three-year period. The order was issued after the Board conducted an evidentiary hearing to determine whether Dr. Ensenat had acted unprofessionally or immorally in exercising the privileges provided for by license. The hearing was initiated by the complaint of a female adult patient, who alleged that Dr. Ensenat had, in the course of his physician-patient relationship, engaged or attempted to engage in suggestive and sexual conduct without the consent of the patient.
In July 1976, the Board was advised that Dr. Ensenat had been arrested by the New Orleans Police Department and charged with indecent sexual behavior with a minor. The Board’s investigation of the report revealed information that Dr. Ensenat had, in fact, on multiple occasions engaged and sought to engage in nonconsensual, overt sexual acts with a minor female patient under 14 years of age. Based on such information, exercising its authority under LSA-R.S. 49:961(C), on July 26, 1976, the Board suspended Dr. Ensenat’s license to practice medicine in the state of Louisiana. Further, the Board gave him formal notice of alleged violations of the Louisiana Medical Practice Act, to-wit: “[ujnprofessional conduct,” and “[ijmmoral conduct in exercising the privileges provided for by license....” LSA-R.S. 37:1285(A)(13) and (15).
Additionally, on August 20, 1976, representatives of the United States Drug Enforcement Administration furnished the Board with evidence indicating that Dr. Ensenat had prescribed or dispensed controlled substances without legitimate medical justification other than in the course of his professional practice. As a result, the administrative charges then pending against Dr. Ensenat for hearing on September 16, 1976 were supplemented with additional charges of “[pjrescribing, dispensing or administering habit-forming drugs or other legally controlled substances in other than a legal or legitimate manner,” and “[professional or medical incompetency.” LSA-R.S. 37:1285(A)(6) and (12).
On the date of the administrative eviden-tiary hearing, Dr. Ensenat advised the Board of his intent not to contest the charges and subscribed to a consent order, which was issued and became effective September 16, 1976. The order revoked Dr. Ensenat’s license to practice medicine.
Concerning Dr. Ensenat’s future right to “apply for” reinstatement, the Order stipulated that Dr. Ensenat:
... expressly waives such right for a period of five (5) years from the date *931 hereof and further agrees that consideration of any such request for reinstatement by himself at any time subsequent to such five year period will depend solely upon the discretion of the Board as to whether circumstances justify reinstatement at that time.
On December 6, 1976, Dr. Ensenat was convicted of criminal charges of indecent behavior with a juvenile and the manufacture and distribution of drugs. He was sentenced by the Criminal District Court for the Parish of Orleans to concurrent terms of two and five years imprisonment. On or about August 13, 1977, Dr. Ensenat was pardoned for the crimes for which he had been convicted and paroled from further imprisonment.
On seven separate occasions, Dr. Ensen-at has requested or petitioned the Board for reinstatement of his license to practice medicine. Such requests and petitions were received and acted on by the Board in May-June 1980, September-October 1980, May-June 1982, October-November 1985, February-April 1986, April 1988, and August-October 1989.
As early as September 19, 1980, more than one year prior to expiration of the five-year moratorium, the Board expressed its willingness to grant Dr. Ensenat an Institutional Temporary Permit pursuant to stipulated terms and conditions.[1] Dr. En-senat accepted the proposal, but was unable to comply with the conditions. Subsequently, Dr. Ensenat continued to request an unrestricted license, which the Board refused to grant.
In February 1986, Dr. Ensenat’s counsel filed for a limited institutional license to practice medicine. The Board responded on April 8, 1986, in pertinent part, as follows:
Inasmuch as Dr. Ensenat has been out of the active practice of medicine for nearly ten years, it will be necessary for him to take and pass the clinical competence section (Component II) of the FLEX examination and provide evidence of employment offer from one of our state operated hospitals or institutions. Upon completion of these requirements, the Board would then consider granting him an Institutional Temporary Permit.
Dr. Ensenat accepted these conditions and, after failing the test in his first attempt, he passed the FLEX exam in December 1987. Pursuant to the then-existing understanding, he was then eligible for an Institutional Temporary Permit.
However, in April of 1988, Dr. Ensenat once again requested reinstatement of an *932 unrestricted license; the Board again emphasized its willingness to issue only a temporary permit provided he passed the Flex examination and provided evidence of a position in a State institution approved by the Board. A year later, through an attorney, Dr. Ensenat formally petitioned the Board for reinstatement of unrestrictéd li-censure. On October 4, 1989, the Board entered an order denying the petition, concurrently reiterating its position that it was willing to grant Dr. Ensenat an Institutional Temporary Permit.
Dr. Ensenat commenced the present action for review of that final decision of the Board, seeking an “alternative writ of mandamus” to compel the Board to “reinstate [Dr. Ensenat’s] license to practice medicine ..., or, to afford him a full hearing on his application for reinstatement, upon furnishing him with a full outline of the criteria to be used by the Board in determining whether his license should be reinstated ...” The district court entered judgment denying and dismissing Dr. Ensenat’s petition.

Revocation of License

Plaintiff asserts that the five-year revocation of his license resulted from a plea bargaining agreement made with the Board. He further asserts that the agreement implied that should the physician lead an exemplary life during that five-year period and keep himself abreast of developments in medical science, he would be reinstated at the end of that five-year period or, alternatively, that he would be given a hearing, at which time such reinstatement would be considered by the Board.
The Board is an agency of the State of Louisiana, within the Department of Health and Hospitals, constituted under and charged with the enforcement of the Louisiana Medical Practice Act (the “MPA”). Under the MPA, the Board is authorized to suspend, revoke or impose probationary conditions on the license of any physician for statutorily specified causes. LSA-R.S. 37:1285(A).
After reviewing the agreement between Dr. Ensenat and the Board, we find that the agreement contained no implication that Dr. Ensenat would be entitled to reinstatement or even a reinstatement hearing. Additionally, the record reveals that the board afforded Dr. Ensenat several opportunities to resume his medical practice, provided he was able to fulfill certain conditions. Dr. Ensenat has ultimately failed to comply with or rejected every offer extended to him by the Board.
The consent agreement did not give Dr. Ensenat the legal right to reinstatement. A reasonable interpretation is that his license was permanently revoked and he could not seek reinstatement prior to the elapse of five years. The Board’s willingness to grant him an Institutional Temporary License to work in a restricted capacity under supervision is not a waiver of the license revocation. The fact that Dr. En-senat has conducted himself meritoriously since the revocation is not sufficient legal basis to entitle him to restoration of his license. Considering the gravity of the offenses and the intent of the consent decree, we find that the board did not abuse its discretion in refusing to grant Dr. Ensenat an unrestricted medical license. This assignment of error is without merit.

Due Process

Plaintiff contends that for the Board’s refusal to grant him a hearing on this issue constitutes a denial of his right to due process of law as guaranteed by the United States Constitution, as well as the Constitution of Louisiana. Further, if he were granted a hearing for reinstatement, Dr. Ensenat claims, the Due Process Clauses would require that he be given notice of what he would be required to prove to guide the Board in its exercise of its discretion. Woods v. District of Columbia Nurses’ Examining Board, 436 A.2d 369 (D.C.App.1981). He further asserts that a license to practice medicine is a valuable property right which is subject to the requirements of the Due Process Clauses of the federal and state constitutions. State ex rel. McAvoy v. Louisiana Board of Medical Examiners, 238 La. 502, 115 So.2d 833 (1959).
*933 The due process clauses of the federal and state constitutions both provide that no person shall be deprived of “life, liberty, or property, without due process of law.” However, these provisions do not prohibit governmental deprivation of life, liberty and property interests under all circumstances, but only requires that such deprivations be accompanied by such process of law as is due.
Dr. Ensenat’s possession of a medical license gives him a vested property interest, which guarantees him a right to due process prior to revocation of that license. However, by virtue of the 1976 consent order, that property interest was properly extinguished by due process of law, and Dr. Ensenat does not claim otherwise. Dr. Ensenat was given notice of the administrative charges against him which were based on asserted violations of the MPA for which the Board was expressly authorized to revoke his license. See LSA-R.S. 37:1285(A). Ordinarily, Dr. Ensenat would have been entitled to a full evidentiary hearing on such charges, in accordance with the Louisiana Administrative Procedure Act, as well as a written decision of the Board’s findings. However, Dr. Ensen-at effectively waived his right to a hearing and decision as authorized under the APA, LSA-R.S. 49:955(D), when he consented to the Board’s entry of the order revoking his license.
Dr. Ensenat relies on Woods v. District of Columbia Nurses’ Examining Board, 436 A.2d 369 (D.C.App.1981), in arguing his right to due process. However, we find Woods, factually distinguishable from the circumstances involved in Dr. Ensenat’s case. Dr. Ensenat entered a kind of “plea bargain” with the Board regarding the sentence ultimately imposed upon him, while Ms. Woods’ nursing license was revoked without her consent by a legal process that she felt was improper. Thus, the Woods case is inapplicable to this case.
Finally, Dr. Ensenat asserts that the Due Process Clauses of the state and federal constitutions require that he is entitled to notice of what would be required of him for reinstatement. Under the circumstances of this case, the Board is not legally obligated to define the criteria for unrestricted reinstatement. Dr. Ensenat, pursuant to the consent order permanently forfeited his medical license. Therefore, the Board is not legally obligated to restore his license or set standards that Dr. Ensen-at may fulfill to receive his license.
However, we believe that the Board has clearly stated the restricted circumstances under which Dr. Ensenat would be entitled to reinstatement of a restricted license. The stipulations required by the Board appear to be reasonably required to promote a safe environment for both Dr. Ensenat, as well as prospective patients, considering the number of years which have elapsed since Dr. Ensenat last actively practiced medicine.
Under the MPA, the Board unquestionably has authority to either suspend, revoke, or impose probationary conditions on the license of a physician who is found culpable of enumerated causes. LSA-R.S. 37:1285(A). For the reasons previously stated, we find that Dr. Ensenat’s contentions on this issue are without merit.

Authority of Review:

Plaintiff asserts that this court has the authority to review the penalty imposed upon him by the Louisiana State Board of Medical Examiners, and where the penalty imposed is so harsh as to reveal an abuse of discretion, to remand the matter to the Board for further consideration and imposition of a new penalty. LSA-R.S. 37:1062; Beaver v. Louisiana Board of Optometry Examiners, 206 So.2d 118 (La.App. 3d Cir.), writs denied, 251 La. 1073, 208 So.2d 533 (1968).
Plaintiff is correct in his assertion that on appeal of an administrative decision, this court has the authority to review the sanction imposed by the administrative agency and to modify or set aside the sanction “if the penalty imposed is one so harsh as to obviously point up an abuse of discretion.” Beaver at 121. Such judicial review, however, is circumscribed by the APA, which requires that proceedings for review to be commenced within 30 days of an agency’s entry of a final order in an adjudication. *934 LSA-R.S. 49:964(B). Thereafter, neither the correctness of the decision nor the penalty imposed is subject to later or collateral challenge. See generally Bryant v. Middlebrooks, 486 So.2d 188 (La.App. 1st Cir. 1986); West v. Louisiana Department of Public Safety, 432 So.2d 273 (La.App. 1st Cir.1982).
When Dr. Ensenat entered into the consent order, he waived any future right to object to the excessiveness or harshness of the penalty. The appeal time has long since expired to attack the decree. We decline to review the penalty imposed by the Board.

Conclusion

For the above and foregoing reasons, the trial court judgment denying and dismissing Dr. Ensenat’s petition for writ of mandamus is affirmed.
AFFIRMED.

.The conditions for the Institutional Temporary Permit were:
1. The Permit will become effective on the Date of its issue and will expire on the first day of the January, 1981 meeting of the Board. Issuance of the Permit shall create no right, entitlement or privilege to continuing licensure of any kind beyond the date of its expiration, at which time the Consent Order in effect on the date hereof shall reapply as to all of its terms and provisions.
2. Under the Permit, you may engage in the practice of medicine only at the Veterans Administration Hospital or at the United States Public Health Service Hospital. Before beginning such practice, you must provide the Board with written notice of the institution at which you will be employed.
3. During the pendency of such Permit, you shall not apply for or obtain any state license or federal registration for the prescription, dispensation or administration of controlled substances of any class or schedule, nor shall you prescribe, dispense or administer controlled substances of any class or schedule other than orders for medication to patients admitted to the institution at which you are employed under the controlled substances registration number of such institution.
4. Under such Permit, you shall not perform or engage in surgery.
5. You shall authorize your physician-superior in the institution at which you are employed to provide the Board, at its request, with oral or written reports as to your professional progress and performance.
6. You shall appear before the Board at its January, 1981 meeting for a discussion of your practice under the Permit. At such time, the Board may, in its sole and absolute discretion, consider renewal of the Permit.
7. The Institutional Temporary Permit to be issued to you by the Board may be revoked, canceled or suspended at any time by the Board, without the necessity of formal hearing, upon a finding by the Board that you have violated any of the terms, conditions and restrictions upon which the Permit is issued or any other provision of the Louisiana Medical Practice Act or the rules and regulations of the Board.