Arthur E. Blauvelt, J.
This is a proceeding brought under article 78 of the Civil Practice Act against the Secretary of State to review his determination which denied petitioner’s applications under article 27 of the General Business Law (§§ 400-415) for licenses to practice hairdressing and cosmetology and to operate a beauty parlor. Petitioner also seeks an order in the nature of mandamus to compel the respondent to issue to her a temporary license for these purposes and to admit her to the regularly scheduled examination for a regular license.
On the return day of the application, the parties stipulated that there was no triable issue of fact raised by the pleadings and accompanying papers and submitted the controversy for decision at Special Term upon the papers filed and oral arguments presented.
It appears that on or about August 9, 1955, pursuant to the provisions of section 404 of the General Business Law, one Nellie Alvaro Tanner made written applications to the Secretary of State for the licenses above referred to. Petitioner disclosed in her applications the fact that on November 13,1947, in Cayuga County Court, she was convicted on her plea of guilty of the crime of grand larceny in the first degree, committed on or about April 3, 1947, for which crime on November 18, 1947, she was sentenced to imprisonment in the State prison for women at Bedford Hills for an indeterminate term, the minimum of which was to be one year and the maximum of which was to be five years. A certified copy of this judgment of conviction was obtained by petitioner and filed with her applications. Also, in an effort to comply with the statute (General Business Law, § 404), which requires an applicant to furnish “ Satisfactory *132 evidence of good moral character ”, petitioner filed with respondent affidavits of two of her former employers, an affidavit of the director of the beauty culture school from which petitioner was graduated in July of 1955, and a letter of recommendation from the Judge of County Court and Children’s Court in Cayuga County. Each of these four persons attest to the good moral character of petitioner during the years they have known her since her conviction in 1947.
Apparently the applications were proper in form and sufficient and satisfactory to the Secretary of State as to the information therein contained, except with respect to the question of whether or not petitioner possessed the good moral character contemplated by the statute. Respondent referred the matter of the qualifications of the applicant to the Division of Licenses in his department for investigation and report. An investigation was conducted by a senior investigator of the Rochester office of the license division, who made a written unsworn report thereof to the assistant director of licenses in Albany recommending that petitioner’s application be given due consideration. Following this report, the matter was submitted to the advisory committee, created pursuant to section 403-a of the General Business Law, which committee on October 25, 1955, voted to deny the applications. This recommendation of the advisory committee was apparently adopted by respondent as on October 26, 1955, by letter from the assistant director of licenses, respondent denied the applications, stating, in part: ‘ ‘ please be advised that a very thorough investigation has been conducted into your background for the purpose of ascertaining whether you are able to meet the eligibility requirements of the hairdressing and cosmetology license law. On the basis of our inquiries, we find that you are unable to meet the requirements of good moral character. In arriving at this conclusion, your original history as well as your personal history have been taken into consideration. Tour applications for a license to practice hairdressing and cosmetology and a license to operate a beauty parlor are hereby denied.”
Upon receipt of this letter notifying petitioner of the determination of respondent denying her license applications, petitioner requested that she be given a hearing on the question of her good moral character, which application for a hearing was denied by respondent.
From the papers filed with the court it appears that at the time petitioner was sentenced on November 18, 1947, the presiding Judge stated “ that early parole would be recommended.” Petitioner was released on parole from confinement in prison *133 at Bedford Hills on November 23, 1948, and finally discharged from parole supervision on November 10, 1952, without ever having been charged with violation of her parole. There is no substantial legal evidence in the record to contradict the contention of petitioner that since her conviction in 1947 she has lead an honest, temperate and law-abiding life, without any suspicion or charge of immorality or impropriety having been made against her. On the contrary, the affidavits and letter of recommendation referred to above as having been filed by petitioner in support of her applications cannot be ignored, as they constitute corroborative evidence in support of her claim of good moral character. Other than the fact of the one conviction in 1947, anything else which might reasonably be considered derogatory to her good moral character which was before respondent when he made his determination consists only of the unsworn report of the investigator for the license division. This report is obviously based upon hearsay characterizations, opinions and speculations of petitioner’s former parole officer. Obviously, such parole officer’s information must have come to her at least second-hand, it all relates to dates at least prior to discharge of petitioner from parole in 1952, the alleged characterizations were not apparently considered true or serious enough to warrant a charge of violation of parole by the parole officer and in the opinion of this court could not legally be considered by respondent as competent evidence on the question of petitioner’s moral character in 1955, especially in view of the fact that petitioner was denied a hearing thereon.
There is no question in the mind of the court but that honesty is an essential element of good moral character and that petitioner was dishonest when she committed grand larceny in the first degree on April 3, 1947. However, this court refuses to subscribe to any philosophy that assumes that a person once dishonest may not by future conduct acquire good moral character. If such be the case, the State should alter its programs now in force in correctional institutions whereby reformation of convicts is undertaken. The duty of respondent in the instant case was to determine whether or not the applicant was of good moral character at the time she applied for the licenses. It would of course be proper to consider a former conviction, but that would not necessarily prevent the issuance of a license. As has been said by the Appellate Division of this court in the Fourth Department, in discussing the question of a conviction of crime in relation to eligibility for civil service appointment, “ It is fair to assume that such an applicant would be refused only in the event his moral qualities at the time of his applica *134 tion, when considered in their relation to the employment he seeks, would warrant such refusal. To interpret the rule otherwise would disqualify for civil service every applicant who has been guilty of a crime regardless of the duties of the position to be filled or the nature of the crime previously committed; it would disregard both the possibility and the hope of moral reformation.” (Matter of Nalore v. Baker, 244 App. Div. 554, 557.)
The State prison for women at Bedford Hills, where petitioner served about one year in 1947-1948, is maintained both for the security and reformation of women prisoners in this State. (Correction Law, § 90.) Among the vocational training programs offered to inmates at Bedford Hills is a complete course in hairdressing and cosmetology. It would seem most inconsistent and improper to have one governmental department stress a vocational training in a correctional institution for convicts and have another governmental department deny the right to a reformed convict who has expiated her crime and paid her debt to society to enter upon such a vocation and become self-supporting after reformation and rehabilitation, especially in the absence of legislative mandate requiring such action.
It is to be noted that the statute (General Business Law, art. 27) neither lays down any standards to be used in determining good moral character nor does it state that a former conviction of a crime shall be a bar to a license to practice hairdressing and cosmetology. Nor is conviction of a crime made a ground for suspension or revocation of a license. (General Business Law, § 409.) Furthermore, although the statute provides for a hearing before a license may be suspended or revoked, no express provision requires that a hearing must be held before an application for a license is refused. (General Business Law, § 410.) There would be grave doubt as to the constitutionality of this article 27 of the General Business Law, no hearing being provided for in cases such as the instant one, except for the fact that the article empowers the Secretary of State to “ adopt such rules and regulations * * * as may be necessary with respect to * * * the investigation and examination of applicants and their qualifications ”. (General Business Law, § 403.) Counsel for the parties in this proceeding inform the court that respondent has omitted to adopt or prepare any rules and regulations under this article. He has the power given to him by the Legislature to adopt rules and regulations to administer this statute and could well provide by such rules and regulations that a hearing should be afforded to any applicant for a license, upon demand, before denial of a license.
*135 A license to operate a beauty parlor and to engage in the practice of hairdressing and cosmetology is a thing of value to applicant from which she may not be deprived without due process of law. She without question possesses the technical skill and training required for a temporary license and to qualify her to take the examination for the regular license, she having satisfactorily completed an eight months’ course at a beauty culture school. Although requested by her, petitioner was refused the right of a hearing by respondent on the question of her good moral character. The determination of respondent was reached without any findings of fact having been made, as far as the record discloses.
The refusal of respondent to grant applicant the hearing requested constituted a deprivation of petitioner’s rights without due process. In the opinion of this court, under the facts of this case and on the record presented, respondent abused his discretion and acted arbitrarily and unreasonably and without legal basis when he denied petitioner’s applications for licenses without giving her the opportunity to be heard and to be confronted with and to cross-examine adversary witnesses upon the question of her good moral character.
For the reasons stated the determination of respondent dated October 26, 1955, that petitioner is not of good moral character is annulled and respondent is directed, upon payment of the prescribed statutory fees, to issue to petitioner a temporary license to engage in the practice of hairdressing and cosmetology and to admit her to the next regularly scheduled examination for a regular license.
The petitioner will present a proposed order, approved as to form by the attorney for respondent, in default of which settle order on two days’ notice.