INDIANA STATE BOARD OF REGISTRATION AND EDUCATION FOR HEALTH FACILITY ADMINISTRATORS, Appellants (Defendants Below),

v.

Earl S. CUMMINGS, Appellee (Plaintiff Below).

No. 2–1176A414.

Court of Appeals of Indiana, Fourth District.

April 9, 1979.

Rehearing Denied May 2, 1979.

Theodore L. Sendak, Atty. Gen., Robert L. Clegg, III, Michael Schaefer, Deputy Attys. Gen., Indianapolis, for appellants.

Paul G. Roland, Ruckelshaus, Bobbit & O'Connor, Indianapolis, for appellee.

MILLER, Judge.

The Appellant-defendant, Indiana State Board of Registration and Education for Health Facility Administrators (Board) appeals the judgment of the trial court ordering the Board to grant the Appellee-plaintiff, Earl Cummings, a comprehensive license as a health facility administrator.[1]

1. A health facility administrator is defined as a person "who administers, manages, supervises, or is in general administrative charge of a licensed health facility". IC 25 19-1 1(b). Licensed health facilities include nursing homes, homes for the aged, retirement homes, sanitariums, convalescent homes, etc. IC 16-10-2-3.

We have before us the following issues:

1. Does the Board's motion to correct errors meet the specificity requirements of Ind. Rules of Procedure, Trial Rule 59(B)?

2. Did the trial court err in finding that there was no evidence in the record of the hearing before the Board which supported the Board's finding that Cummings did not have good moral character?

3. Did the trial court err in ordering the Board to issue the license to Cummings?

We find that the trial court correctly held the Board's denial of the license was contrary to law but remand in order that the cause be resubmitted to the Board for further proceedings.

Cummings submitted his application to the Board on June 24, 1975, for a license as a Health Facility Administrator.[2] On October 21, 1975, Cummings' application was denied by the Board "pursuant to IC 1971, 25–19–1–3(1) regarding lack of good moral character as evidenced by a conviction for theft, conspiracy and for violation of the Indiana Securities Act."[3] Pursuant to IC 4–22–1–24, Cummings appealed to the full Board. From the Board's negative decision, Cummings filed a verified petition for review with the Superior Court of Marion County. The trial court found the Board's failure to issue a license to Cummings was "arbitrary, capricious and not in accordance with law," and "in excess of the Board's statutory authority" and ordered the Board to issue the license to Cummings.

cient specificity the issues which it now raises on appeal. The motion directed the trial court's attention to the evidence of Cummings' convictions for theft, conspiracy and violation of the Indiana Securities Laws as supportive of the Board's finding that Cummings did not have good moral character and, further, specifically objected to the grant of the license by the trial court. In its accompanying memorandum the Board cited *Department of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248, as authority for limiting the trial court's right or scope of review "to a consideration of whether or not there is any substantial evidence to support the finding and order of the administrative body."

Additionally, *Lizton, supra,* stands for the general proposition that, under the Administrative Adjudication Act, a trial court, in exercising its review function, cannot by its decision supplant the decision of an administrative agency on the merits of an issue which is, under the law, properly within the province of the agency. We conclude, therefore, that the motion to correct errors accompanied by its supporting memorandum contained a sufficient statement of facts and grounds to substantially comply with Indiana Rules of Procedure, Trial Rule 59(B). *Hendrickson and Sons Motor Co. v. Osha* (1975), Ind.App., 331 N.E.2d 743; *Leist v. Auto Owners Insurance Co.* (1974), 160 Ind.App. 322, 311 N.E.2d 828.

### I.

■ Initially, we find that the Board's motion to correct errors stated with suffi-

### II.

The Board alleges that the trial court erroneously substituted its judgment for

---

**2.** Cummings had satisfactorily completed the course of instruction prescribed by the Board and successfully passed the Board examination. Cummings possessed a Bachelor of Science Degree (1954) with a major in philology and a minor in social science and a Master of Arts Degree (1973) with majors in social-psychology and adult education. He had been employed by the Indiana Department of Corrections as an instructor since March, 1971.

**3.** Quoted from the Notice to Cummings informing him of the denial of his license. In his

application (an exhibit at the Board hearing), Cummings listed three convictions, theft and conspiracy to commit theft (both dated December, 1968 in the Vigo Circuit Court) and violation of the Indiana Securities Act (April, 1969, in the Green Circuit Court). Cummings claimed in his application that all three convictions were "based on the same actions". Copies of the indictments and/or informations were not part of the record. He was imprisoned from May 1, 1969 to February 1, 1971.

that of the Board which had the power, authority and expertise to weigh the evidence and judge the credibility of the testimony.

Cummings argues that the trial court simply exercised its reviewing powers to determine from the record of the proceedings before it whether the Board's "finding, decision or determination [was] supported by substantial, reliable and probative evidence." IC 4–22–1–18.

■ We find the trial court correctly determined there was insufficient evidence in the record which could support the Board's finding that Cummings did not have good moral character at the time of his application. Consequently, the Board's decision was contrary to law.

The legislature has detailed the criteria for qualification of a person as a health facility administrator in IC 25–19–1–3 as follows:

"No license shall be issued to a person as a health facility administrator unless:

(1) he is at least eighteen (18) years of age, of good moral character and unless he is of sound physical and mental health;

(2) he has satisfactorily completed a course of instruction and training prescribed by the board . . . .

(3) he has passed an examination administered by the board . . . ."

The Board further requires, through its regulations, that the applicant submit two letters from individuals engaged in business or professional work who certify to his good moral character and, if the applicant has been convicted of a felony, he must file with the Board a certificate of good conduct from the board of parole. Ind.:Admin.Rules & Regs. (25–19–1–4)–5 (Burns Code Ed.).

At the hearing following denial of his license Cummings had the burden of proving his qualifications for the license. IC 4–22–1–24; *Department of Financial Institutions v. State Bank of Lizton, supra.* Cummings produced the required letters as to his moral character, the certificate of good conduct and three witnesses who testified to his present good moral character, all uncontradicted and unimpeached.

Cummings thus made a *prima facie* showing that he had good moral character at the time he filed his application. Admittedly, the Board had before it evidence of three felony convictions, two in December, 1968; and the other in April, 1969, all arising out of the same incident. From its findings it appears that the Board based its decision on these convictions when it found Cummings lacked good moral character and denied his application.[4] Our legislature, however, has

4. The findings of the Board as found in the record are as follows:

"FINDINGS

1. The Indiana State Board of Registration and Education for Health Facility Administrators is an agency of the State of Indiana duly empowered to hold administrative hearings in order to determine the qualifications of applicants for licensure as health facility administrators.

2. The Indiana State Board of Registration and Education for Health Facility Administrators has jurisdiction over both the subject matter and the parties to this action.

3. Pursuant to the provisions of IC 4–22–1, due notice of this Administrative Hearing was served upon:

Mr. Earl S. Cummings
215 Eastern Avenue
Plainfield, Indiana 46168

4. Mr. Cummings submitted an application for a *health facility administrator's license* on June 26, 1975.

5. Mr. Cummings' license was denied on October 21, 1975, for the reason that the applicant's previous convictions for theft and violation of the Indiana Security Act evidenced a lack of good moral character.

6. On October 30, 1975, Mr. Cummings gave notice of his appeal to the full Board, and a hearing was held on that request on January 9, 1976.

7. Pursuant to IC 1971, 4–22–1–24 after the denial of a license, an applicant may appeal to the full board, and in such hearing the applicant has the burden of proof to establish his qualifications for licensure.

8. On said application and in his testimony before the Health Facility Administrators Board, *Mr. Cummings admitted previous convictions for theft and violation of the Indiana Securities Act.*

9. In the discharge of his duties as a health facility administrator, Mr. Cummings would be required to fulfill financial responsibility for the funds and valuable property of other people.

forbidden agencies from using felony or misdemeanor convictions as the sole basis for denial of the license application:

"No license or certificate of registration, which an individual is required by statute to hold to engage in a business, profession, or occupation, shall be denied, revoked or suspended because the applicant or holder has been convicted of a misdemeanor of felony. *The acts from which his conviction resulted may, however, be considered under other statutory requirements, if such acts have a direct bearing on whether the applicant should be entrusted to serve the public in that specific capacity."* (our emphasis)

IC 25–1–1.1–1.

■ Thus, pursuant to this statute, the Board could have considered the criminal "acts" of the applicant to determine their relationship to a specific statutory requirement (good moral character) and to his fitness to serve in the occupation of administrator. However, as a condition precedent to the Board's utilization of this statute as a basis for denial of a license it must have before it evidence showing the "acts" of Cummings which ultimately led to his convictions.

We have carefully examined the evidence presented before the Board and find no evidence of substance describing Cummings' criminal acts. The fact that Cummings had been convicted of theft, conspiracy to commit theft and a violation of the Indiana Securities Law was admitted by Cummings. The only other testimony and/or evidence relating to these convictions surfaced during the cross-examination of Cummings as follows:

Q. "What activities was this conviction related to?

A. "At the time that the charges were filed against me, I was serving as a minister of a church in Brazil, Indiana. I was involved in a fund—

Q. "What town?

A. "First Christian Church, Brazil.

We were involved in a fund raising project for a building program at this time. The charges were results of handling of funds of that particular institution at that time.

\*　\*　\*　\*　\*　\*

Q. "Were these funds diverted for personal use or for some other person?

A. "That was the question that was being determined at the time of the conviction. The Court held, or the jury trial, that they were diverted— not all for personal use, but they were diverted.

Q. "Thank you, Mr. Cummings."

Clearly the foregoing testimony fell far short of establishing "the acts from which his conviction(s) resulted." The nature and extent of Cummings' participation in the criminal conversions and securities' violation remains a mystery.

■ Understandably, because of the lack of substantial evidence, the Board made no findings of fact, as is required, stating what acts were considered in making its determination besides noting the admitted fact of the convictions. *Capital Improvement Board of Managers of Marion County v. Public Service Commission* (1978), Ind.App., 375 N.E.2d 616. It is possible that the circumstances and deeds underlying the convictions were of such a nature as to indicate that, even in the absence of subsequent non-moral conduct since Cummings' release from prison in 1971, he should not be entrusted with a license for an occupation possibly requiring responsibility for property of others. But upon the facts before us, the situation could also be of a nature not likely to be repeated and insufficient as a basis for denial. Where only speculation furnishes the basis for a deci-

10. *The acts of which Mr. Cummings was convicted* have a direct bearing on whether he should be licensed to serve the public as a health facility administrator.

11. Several fellow workers of the applicant testified on behalf of Mr. Cummings relative to

his excellent job performance with his present employer, the Indiana Department of Correction; however, none of those witnesses testified that Mr. Cummings has had any financial responsibilities in his present employment." (our emphasis)

sion, such determination is arbitrary and capricious. *Kinzel v. Rettinger* (1972), 151 Ind.App. 119, 277 N.E.2d 913.

Although not critical to this decision, we find that the Board, at rehearing, must have evidence before it to establish the administrator's responsibility for the property and funds of health facility residents or others if it again seeks to deny a license on the basis of such responsibility. The Board's finding number 9 reads:

"In the discharge of his duties as a health facility administrator, Mr. Cummings would be required to fulfill financial responsibility for the funds and valuable property of other people."

In this case, the only testimony relating to such finding was as follows:

Q. "Mr. Van Orman,[5] I have just a few questions for you about the operation of a nursing home.

Does an Administrator frequently become entrusted with property or funds of his residents?

A. "I would say that he would.

Q. *"Is this required of him by rule or statute?*

A. *"No, it is not."* (our emphasis)

■ This evidence was too indefinite and ambiguous to establish such responsibility. Thus, even if the Board had before it the specific criminal acts of Cummings, it would have been unable to relate such acts to those particular duties of an administrator which affect the property and funds of residents and others. As noted earlier, only if the acts leading to the convictions have a direct bearing on the applicant's present fitness to serve the public as a health facility administrator may they be the basis for denial of his license. IC 25–1–1.1–1. *See also, North v. Barringer* (1897), 147 Ind. 224, 46 N.E. 531 (liquor license); *Corro v. Moss, Commissioner of Licenses* (1945), 184 Misc. 1050, 56 N.Y.S.2d 652 (barber's

license); *Tanner v. De Sapio* (1956), 2 Misc.2d 130, 150 N.Y.S.2d 640 (beautician's license); 1961 Op.Ind.Att'y Gen. No. 52 page 321 (barber's license). Further, it is settled that any qualification imposed by a state as a condition to practice a profession or occupation must have a rational connection with the applicant's capacity and fitness to perform such occupation or profession. *Schware v. Board of Examiners* (1957), 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (admission to practice law); *Baker v. Miller* (1956), 236 Ind. 20, 138 N.E.2d 145, 59 A.L.R.2d 1393 (disbarment proceedings); *Baker v. Columbus Municipal Separate School District* (D.C.1971), 329 F.Supp. 706 (teacher's license); *Alexander v. City of St. Paul* (1975), 303 Minn. 201, 227 N.W.2d 370 (motion picture theatre license).

Thus, in *Schware, supra,*[6] Mr. Justice Black explained this standard as follows:

"A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. *Dent v. State of West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. Cf. *Slochower v. Board of Higher Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, and see *Ex parte Secombe,* 19 How. 9, 13, 15 L.Ed. 565. A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. *Douglas v. Noble,* 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; *Cummings v. State of Missouri,* 4 Wall. 277, 319–320, 18 L.Ed. 356. Cf. *Nebbia v. People of State of New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. Obviously an applicant could not be ex-

---

5. The Director of the Board.

6. Schware had been denied permission by the New Mexico Supreme Court to take the bar examination for the reason that "[Schware's membership in the Communist Party], together

with his other former actions in the use of aliases and record of arrests, and his present attitude toward those matters, were the considerations upon which [we approved the denial of his application]." Quoted at p. 756 of 77 S.Ct.

cluded merely because he was a Republican or a Negro or a member of a particular church. Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory. Cf. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220." (footnote omitted) p. 756 of 77 S.Ct.

We share the Board's obvious concern for safeguarding the property and funds of licensed health facility residents. Further, we recognize that honesty and trustworthiness are elements of good moral character and Cummings no doubt lacked these attributes at the time he committed theft and violated the securities laws. However, we also agree with the views expressed by Justice Blauvelt in *Tanner, supra,* at p. 644 of 150 N.Y.S.2d as follows:

"There is no question in the mind of the Court but that honesty is an essential element of good moral character and that petitioner was dishonest when she committed grand larceny in the first degree on April 3, 1947. *However, this Court refuses to subscribe to any philosophy that assumes that a person once dishonest may not by future conduct acquire good moral character.* If such be the case, the State should alter its programs now in force in correctional institutions where by reformation of convicts is undertaken. *The duty of respondent in the instant case was to determine whether or not the applicant was of good moral character at the time she applied for the licenses.* It would of course be proper to consider a former conviction, but that would not necessarily prevent the issuance of a license. As has been said by the Appellate Division of this Court in the Fourth Department, in discussing the question of a conviction of crime in relation to eligibility for civil service appointment,—

' * * * It is fair to assume that such an applicant would be refused only in the event his moral qualities at the time of his application, when considered in their relation to the employ-

ment he seeks, would warrant such refusal. To interpret the rule otherwise would disqualify for civil service every applicant who has been guilty of a crime, regardless of the duties of the position to be filled or the nature of the crime previously committed; it would disregard both the possibility and the hope of moral reformation. * * * ' *Nalore v. Baker,* 244 App.Div. 554, 279 N.Y.S. 944, 947." (our emphasis)

 In conclusion, an administrative order must be based on facts specifically found by the agency and those facts must be based on substantial evidence in the agency's record of proceedings. *City of Muncie v. Public Service Commission* (1978), Ind.App., 378 N.E.2d 896. The purpose of the statute forbidding the use of convictions to deny licenses is to require that the nature of the acts underlying a conviction be explored, and, in turn, be related to both a specific statutory requirement and, further, to the occupation or profession. The trial court correctly found that the record does not contain evidence to support the Board's decision as required by the statute and properly vacated the Board's findings.

### III.

 The Board questions the trial court's action in ordering it to issue a license to Cummings citing the Administrative Adjudication Act, IC 4–22–1–18, and *Indiana State Teachers Retirement Board v. Smock* (1975), Ind.App., 332 N.E.2d 800. We agree.

Our courts have consistently held that under IC 4–22–1–18 the trial court may properly vacate an agency's findings as contrary to law but it exceeds its authority when it compels agency action as part of its initial review function. *Indiana Alcoholic Beverage Commission v. Lamb* (1971), 256 Ind. 65, 267 N.E.2d 161; *Aeronautics Commission of Indiana v. Radio Indianapolis, Inc.* (1977), Ind.App., 361 N.E.2d 1221; *Indiana Alcoholic Beverage Commission v.*

*Johnson* (1973), 158 Ind.App. 467, 303 N.E.2d 64; *Smock, supra.*

The trial court's judgment vacating the Board's findings is affirmed and the court's order to grant the license is reversed. Further, the cause is remanded to the trial court with instructions to remand the case to the Indiana State Board of Registration and Education for Health Facility Administrators with directions that said Board redetermine whether to grant or deny Cummings' license by conducting further proceedings not inconsistent with this opinion.

CHIPMAN, P. J., and YOUNG, J., concur.