JOHNSON COUNTY PLAN COMMIS-
SION, Ethan P. Teeters, Myrtle A. Teet-
ers, James P. Reum and Darlene J.
Reum, and other remonstrators of
Record, Appellants,

v.

RAMSHEAD CORPORATION, Appellee.

No. 4–882A255.

Court of Appeals of Indiana,
Fourth District.

May 15, 1984.

R.M. Gholston, Franklin, for appellants.

Joe N. Van Valer, George E. Purdy, Van Valer, Wicker & Williams, Greenwood, for appellee.

MILLER, Judge.

The Johnson County Plan Commission and intervening remonstrators (collectively labelled "Commission") appeal a trial court judgment against them and in favor of RamsHead Corp. whereby the court mandated the approval of a preliminary subdivision plat. The Commission had denied approval of RamsHead's proposed plat, citing various deficiencies in procedure and substance, which indicated noncompliance with pertinent ordinances and the county's comprehensive land use plan. Upon consideration of the allegations in RamsHead's petition for writ of certiorari, the trial court determined there was not sufficient evidence to support the Commission's findings of fact and conclusions of law, reversed its decision, and mandated approval of the plat. On the whole, we are inclined to agree with the trial court's conclusions that most of the plat's deficiencies were encouraged, if not actually occasioned, by the Commission's failure to follow its own procedures. Thus, we affirm that part of its decision reversing the Commission's disapproval. However, we must remand for new proceedings before the Commission because RamsHead indeed failed to comply with the subject ordinances.

## ISSUES

The fundamental questions the Commission asks us to examine are:

1. Was the trial court barred from considering the Commission's disapproval of the plat on the grounds such was not a final administrative decision and therefore not reviewable?

2. Did the trial court err when it reversed the Commission's decision for lack of substantial evidence to support its findings and conclusion?

3. Did the trial court err when it mandated the Commission to approve the preliminary plat?

## FACTS

RamsHead is desirous of constructing a subdivision of 153 lots on a 45-acre tract of land in White River Township in Johnson County. On October 28, 1980, in pursuit of that goal, RamsHead filed "Application for P.U.D. [Planned Unit Development] & Preliminary Approval of Plat of Proposed Subdivision of Land" with the Commission. The Commission set this application for public hearing to be held at its November 10 meeting. In the meanwhile, RamsHead published legal notice of the hearing in the local newspaper, describing its application as a "petition [which] requests preliminary plat approval for residential development," and sent copies of it and an accompanying letter to surrounding landowners. At the public hearing, several remonstrators from among the surrounding landowners and other interested witnesses testified to current, as well as feared, drainage and flooding problems in the neighborhood and to alleged traffic hazards, which would be generated by the increased number of automobiles in the area. In addition, various procedural defects in RamsHead's application were itemized. As a result of this testimony, the Commission voted to deny its approval of the preliminary plat.

RamsHead petitioned for writ of certiorari to Johnson Circuit Court, which court issued an order for the Commission to file its findings of fact and conclusions of law. Those findings and conclusions are, in substantially edited form:

"1. APPLICATION: The application for Planned Unit Development is controlled by the Johnson County Subdivision Control Ordinance and by Section 315 of the Zoning Ordinance....

"2. NOTICE REQUIREMENTS: Notice to the surrounding landowners is required informing them of the nature of the proceedings before the Plan Commis-

sion. Evidence disclosed that notice was not given to all surrounding landowners, namely, Mary Jane Teeters, so notice as required by the Zoning Ordinance was not given. In addition, the legal notice mailed to the adjoining landowners stated only that the Petitioner 'requests preliminary plat approval for residential development.' Notice was not complete to inform the surrounding landowners of the nature of the proposed hearing.

"3. PROCEDURAL REQUIRE-MENTS:

"a. Petitioner failed to provide the Plan Commission five copies of the preliminary proposal as required by Section 402 of the Subdivision Control Ordinance.

"b. Petitioner failed to present proof that the Plan Commission had been notified ten days prior to the public hearing, that the Petitioner intended to proceed with preliminary plat approval as required by Section 403.2.

"4. AFFECT [sic] ON ADJACENT PROPERTIES: Plan Commission after hearing evidence of all the parties finds the following:

"a. The area under consideration for the Planned Unit Development is zoned R–3 and that the proposed lots in the Planned Unit Development do not meet R–3 standards as far as size, width, and depth nor do they all have the square footage per lot as required in the Zoning Ordinance for R–3 zoning, that is to say, 12,000 square feet with 80 feet of frontage per lot.

"b. The proposed subdivision does not meet the requirements of Subdivision Control Ordinance Section 702.4 relating to sidewalks required for subdivisions where the subdivision contains more than three lots per acre land plotted into lots.

"c. The Planned Unit Development does not provide for adequate drainage as required by Subdivision Control Ordinance Section 703....

"d. ... Additional water placed in the natural drainage system would injure adjacent property.

"e. ... one drainage retention pond which was designed to drain water across a cultivated farm field would prevent full use of the field for production of row crops.

"5. TRAFFIC FLOW AND SAFETY FEATURES: The proposed subdivision in the Planned Unit Development has high density use for residential purposes.... The following facts were found to exist in reference to the Planned Unit Development as far as traffic is concerned.

"a. ... view of the proposed exit from the subdivision obscured for eastbound traffic as a resulting traffic hazard for those using the exit to the subdivision and to those using Smith Valley Road.

"b. The other exit from the subdivision is onto Berry Road.... This road is not designed for heavy traffic use and is inadequate to carry the increase in traffic and in addition, ... [t]he intersection of the county road system presents a hazard to those using the county road system in the area and this hazard would be increased by the proposed Planned Unit Development.

"6. CONCLUSION:

"a. The procedural requirements of the Johnson County Master Plan for the amendment of the Master Plan as far as notice to surrounding landowners of the nature of the application filed by the Petitioner and further the lack of adherence to the rules and regulations of the Ordinance requiring copies of the plan to be on file ten (10) days ahead of time with written favorable recommendation from the Technical Committee of the Plan Commission were not met.

"b. The proposed preliminary planned subdivision does not meet the standards for R–3 zoning and the proposed subdivision does not present a plan consistent with the purpose of this Ordinance.

"c. The properties adjacent to the Planned Unit Development will be adversely affected as far as drainage of surface water is concerned and will be

adversely affected as far as increased traffic because of the nature and design of the arterial streets and roads in the area are concerned and because of the topography of the Smith Valley Road and the heavy traffic existing on that roadway.

"For these reasons, the Planned Unit Development requires an amendment to the Johnson County Master Plan and shall not be recommended to the Commissioners for Johnson County as an amendment to the Master Plan and further that the subdivision as proposed in the Planned Unit Development shall be denied as not meeting the planned criteria of the Master Plan and that the proposed subdivision adversely affects adjoining land owned by others."

Record, pp. 286–91. After hearing to the trial court, the judge rendered the following, from which we have excised all additional (and therefore irrelevant) facts presented at that hearing:

## "FINDINGS OF FACT

"1. Petitioner properly mailed notice letters to each surrounding landowner entitled to notice whose addresses appeared in the records of the Treasurer of Johnson County....

"While petitioner's notice letters to surrounding landowners did not specifically mention the P.U.D. request, the notice sufficiently informed the landowners of the nature of petitioner's application.

"2. ... Despite the absence of the report from the Technical Committee as required by § 403.1 of the Ordinance, the respondent proceeded to conduct a public hearing on petitioner's Application on November 10, 1980.

"3. The Comprehensive Plan of Johnson County provides for medium-density residential use of the real estate here involved. The Thoroughfare Plan of the Comprehensive Plan was designed to accomodate traffic flowing from such use.

"4. The P.U.D. requested in petitioner's Application does not increase the overall density of the real estate beyond the R–3 provisions for which it is zoned.

\*    \*    \*    \*    \*    \*

"6. Section 402.1 of the Ordinance does not require that sidewalks be shown or included on a preliminary plat."

## CONCLUSIONS OF LAW

"1. Petitioner satisfied the notice requirements of 403.2(d) of the Subdivision Control Ordinance of Johnson County (hereinafter 'Ordinance').

"2. It was the responsibility of respondent's Technical Committee to see that the preliminary plat submitted by petitioner complied with the pertinent provisions of the Ordinance, and petitioner was entitled to notice at least ten days prior to hearing if any non-conformity was found by the Technical Committee.

"The respondent, through the failure of the Technical Committee to issue a report and allowing petitioner to proceed to hearing, waived the requirements of § 402.1 of the Ordinance regarding the submission of multiple copies of the plat and § 403.2 regarding notification to the respondent ten days prior to public hearing of petitioner's intention to proceed.

"The respondent further waived the provision of § 402 of the Ordinance requiring submission of the Application at least twenty days prior to the hearing date by issuing its own final filing date which conflicted with the Ordinance.

"By acquiescing to the above-mentioned procedure 'defects' in petitioner's Application, respondent is now estopped from claiming them as reasons for denial of the Application.

"3. Petitioner was entitled to rely upon the R–3 zoning of the land and upon the provisions of the Comprehensive Plan of Johnson County and the Subdivision Control Ordinance ... as prepared by the County, and the County is estopped to deny that the land involved is not suitable for medium density residential development. . . .

"4. Petitioner's P.U.D. complied with the provisions of § 802.3 of the Ordinance.

"5. It is the responsibility of the Johnson County Drainage Board to determine the sufficiency of the drainage plans required for subdivision development pursuant to § 402.4 and § 403.6 of the Ordinance.

"The sufficiency of petitioner's drainage plan for the proposed preliminary plat was not an issue before the respondent at the public hearing on November 10, 1980, and was not properly a consideration in approving or disapproving the preliminary plat.

"The sufficiency of a drainage plan submitted pursuant to § 402.4 of the Ordinance shall be measured only against the specific and concrete standards of the Ordinance.

"6. Petitioner's Application for P.U.D. and Preliminary Approval of Plat sufficiently complied with the requirements of the Ordinance and the provisions of the Comprehensive Plan of Johnson County.

"7. The Findings of Fact and Conclusions submitted by respondent to this Court are wholly inadequate to justify denial of petitioner's Application and fail to show just cause why petitioner's Application should not be approved by this Court as required in the original Findings of Fact, Conclusions of Law and Order issued by this Court on August 7, 1981, and by reference incorporated herein.

*　　*　　*　　*　　*　　*

"10. This Court, pursuant to *Tippecanoe County v. Sheffield*, 181 Ind.App. 586, 394 N.E.2d 176, has the authority to reverse the decision of the respondent and approve petitioner's Application for P.U.D. and Preliminary Approval of Plat."

Record, pp. 308–12. The Commission wholeheartedly disagrees with the trial court's result and appeals to us for aid.

## DECISION

### Finality

The Commission asserts RamsHead could not petition for certiorari upon the disapproval of its preliminary plat because such action was not final and therefore not reviewable. The Commission is incorrect.

The review procedure for plan commission actions at the time of the instant proceeding was governed by IND. CODE 18–7–4–1016 (Supp.1980) (now at IND.CODE 36–7–4–1016) which stated in part that

"[a] *decision* of the advisory plan commission or area plan commission may be reviewed by certiorari procedure the same as that providing for the appeal of zoning cases from the decision of the board of zoning appeals."

(Emphasis added.) The critical word here is "decision," such term having come to mean that an administrative body has reached a determination representing the consummation of the administrative process. *Schenkel v. Allen County Plan Commission*, (1980) Ind.App., 407 N.E.2d 265; *Downing v. Board of Zoning Appeals of Whitley County*, (1971) 149 Ind. App. 687, 274 N.E.2d 542. A "decision" indicates finality, leaving nothing else to be accomplished by the administrative body. *Id.* Thus, this court has determined that the *approval* of a preliminary plat is not a decision. *Schenkel v. Allen County Plan Commission, supra* ("decision" in IND. CODE 18–7–5–57, the forerunner of IC 18–7–4–1016). We reached this result because, under the particular zoning scheme involved, approval of the preliminary plat was only a tentative determination of the Allen County Plan Commission, with approval of a *final* plat being the culmination of the process. In the case here, however, the Commission *disapproved* the preliminary plat. The Commission argues, unconvincingly, that this too was not such a decision of finality subject to judicial review. However, the Commission has failed to inform us of what remains to be done; on the contrary, we do not perceive the

Commission is required to do anything after such an action. We can visualize nothing more final than what happened here. We therefore conclude that the disapproval of the preliminary plat was a decision contemplated by IC 18–7–4–1016 and was reviewable by the trial court. *See generally Knutson v. State*, (1959) 239 Ind. 656, 157 N.E.2d 469 (disapproval of plat addressed by Supreme Court).

*Commission's Decision*

■ When reviewing the decision of an administrative agency, the trial court is justified in reversing such agency's action if it lacks a reasonably sound basis of evidentiary support. The court cannot reweigh the evidence before the agency but must affirm if there is substantial evidence in the record supporting the agency's decision. *Medical Licensing Board v. Ward*, (1983) Ind.App., 449 N.E.2d 1129. In the case at bar, the trial court was correct in its ultimate determination the Commission erred in disapproving RamsHead's preliminary plat for the reasons it provided the court. But as we review the findings of fact and conclusions of law of both the Commission and the trial court, we must keep in mind that many of the errors in RamsHead's application were caused by the Commission's failure to abide by its own procedures and not necessarily because RamsHead had not complied with the subject ordinances. Thus, it is imperative we set forth the pertinent governing ordinances as we discuss the individual problems in order to untangle the Commission's mistakes from RamsHead's deficiencies.

*Procedure:* The Subdivision Control Ordinance of Johnson County sets forth the appropriate procedure for seeking preliminary plat approval of a major subdivision:[1]

"§ 402 SUBMISSION: At least twenty (20) days prior to the regular meeting of the Commission, the subdivider shall submit a written application for Preliminary Plat Approval together with the following:

\* \* \* \* \* \*

j. All existing and proposed permanent features either natural or manmade such as watercourses, tree groves, swamps, natural topographic areas, existing buildings, street lights, street signs, sewers, water mains, culverts, all utility lines, and fire hydrants....

\* \* \* \* \* \*

§ 402.2 Soils Report ... if available within a reasonable time as determined by the Plan Commission ....
"§ 402.4 Drainage Plan ... approved by the County Drainage Board ....
"402.5 Engineering Feasibility Report....
"402.6 Fee ...
"§ 403 REVIEW PROCEDURE
"403.1 Upon the receipt of an application for Preliminary Plat Approval, the Technical Committee shall review the preliminary plat and make a report to the Commission and the subdivider within ten (10) days after the final filing date.

"a. If the Technical Committee finds that the preliminary plat has been prepared in accordance with the terms of this Ordinance, they shall forward a report so starting to the Commission and the subdivider for consideration.
"b. If the Technical Committee finds that the preliminary plat has not been prepared in accordance with the terms of this Ordinance, they shall return the plat to the subdivider with a written report of the items of nonconformance and shall submit a copy of the same to the Commission.

"403.2 The subdivider shall review the report of the Technical Committee and determine whether or not he desires to proceed with the public hearing at the Plan Commission meeting. If the subdivider proceeds with the public hearing, he shall complete the following ten (10) days prior to the public meeting:

---

1. A major subdivision is any subdivision other than the solitary division of one lot into two.

Subdivision Control Ordinance, Johnson County, Indiana, Ordinance No. 68–8 Amended, p. 3.

"a. Notify the Plan Commission in writing.

"b. Place a legal notice of the public hearing in the newspaper designated by the Plan Commission in a form which meets Plan Commission requirements. The cost of the legal notice shall be paid by the subdivider.

"c. Notify all utilities serving the area in writing.

"d. Notify all property owners within 250 feet of the proposed subdivision boundaries by certified mail in a form prescribed by the Plan Commission.

"403.3 At the public hearing, the subdivider shall present proof that he has met all of the requirements of section 403.2.

"403.4 The Plan Commission shall review the Preliminary Plat, review the report of the Technical Committee, and conduct the Public Hearing.

"403.5 Following the public hearing, the Commission may then approve the preliminary plat, (grant Preliminary Plat Approval), approve subject to conditions, or refer it back to the Technical Committee for review or study on a specific technical matter, or disapprove it. The Commission may require such changes or revisions as are deemed necessary in the interest and needs of the community."

Subdivision Control Ordinance, Johnson County, Indiana, Ordinance No. 68–8 Amended. Section 403.2 of this ordinance, as reproduced above, makes it eminently clear that the Commission had no authority to proceed to public hearing upon RamsHead's application for preliminary plat approval until it received RamsHead's written ten-day notice. For reasons unknown to us, the Commission held its hearing only thirteen days after RamsHead filed its application, even one week less than the required twenty days. § 402, *supra.* We therefore conclude that any deficiencies the Commission found in RamsHead's failure to comply with these procedures to have been indirectly, if not directly, provoked by the Commission's failure to abide by its own timetable. The Commission cannot now find fault with RamsHead for failing

to comply with these time requirements. The Commission's finding 3 is therefore without substantial evidentiary basis, and the trial court's findings to this effect were correct.

*Notice:* The notice required to be given adjacent landowners of a public hearing upon an application for preliminary plat approval is found in the Johnson County Plan Commission of Johnson County, Indiana, Rules of Procedure, Art. IV, 1(a)(2):

"1. The docket number and substance of the petition.

"2. The general location (by address or other identifiable locational or geographical characteristics) and legal description of the subject property.

"3. The name and address of the petitioner.

"4. The time and place of the hearing before the Johnson County Plan Commission.

"5. That the petition may be examined in the office of the Building Commissioner of Johnson County."

The Commission's attack upon the effectiveness of RamsHead's notice is that it failed to denominate its plans as a "Planned Unit Development" and instead called it a "residential development." Inasmuch as either type of planned unit development, described in the Zoning Ordinance, Franklin, Indiana, Ordinance No. 75–22, could specifically be limited to residential developments (see §§ 314, 315.4), we fail to see how the more *general* appellation, "planned unit development," would give landowners any greater notice. In fact, we believe the generalized terms would be less effective, as failing to distinguish among residential, business and industrial uses.

The Commission's other complaint regarding RamsHead's notice is that one Mary Jane Teeters failed to receive said notice. There was absolutely no evidence in the record of the public hearing that this Mary Jane Teeters was even entitled to notice. The Commission's finding 2 is therefore also without any evidentiary sub-

stance.[2]  The trial court was correct in this regard.

*Application:* The Commission made a specific finding RamsHead was applying for a planned unit development as defined in Zoning Ordinance, § 315.  There is absolutely no evidence in the record to distinguish whether RamsHead was seeking a § 314 Planned Unit Residential, Business or Industrial Development or a § 315 Planned Unit Development (PUD) District.  Thus, this finding was in error.  However, we must point out to RamsHead that it will have to clarify its intentions in the future because the difference between a § 314 development and a § 315 development will make a difference as to whether a possible amendment to the zoning map will be required.

*Traffic Flow:* The Commission made various findings regarding what it perceived to be traffic problems which would arise because of RamsHead's project.  The only evidence regarding such traffic problems arose by way of witnesses' testimony.  The Commission determined that said testimony and the high density nature of the proposed development led to the inevitable conclusion that the additional vehicular traffic would be hazardous.  We find the Commission had no basis for this conclusion.

One of its two findings was that one of the county roads, Berry Road, could not bear the increased traffic.  First of all, this proposed development is "medium density" as defined in Comprehensive Plan, Johnson County, Indiana, p. 3, "medium density" being 4.5 units/acre.  The RamsHead project is barely 3.4 units/acre.  Secondly, the White River Township area where this project will be located is denoted "medium density residential" in the Johnson County

Comprehensive Plan.  In addition, the subdivision will also abut Smith Valley Road which has been designated a "rural major collector" road.  Such road "must be designed to carry heavy traffic volumes."  Comprehensive Plan, 34, and must be "within a mile or two of each residence in the County."  *Id.* at 28.  Thus, the Commission erred when it rested its decision upon the condition of Berry Road.  Its own land use plan eliminates that problem by letting RamsHead rely on the condition and proximity of Smith Valley Road.  We believe the Commission erred in concluding the project would create traffic problems when, indeed, its land use plan positively encourages a subdivision of this nature at this location.

■  As for speculative problems regarding the location of one of the subdivision exits, we believe such problems should have been pointed out to RamsHead prior to the public hearing.  Section 403.1 of the Subdivision Ordinance requires a report of the preliminary plat be made by the Commission's Technical Committee with copies forwarded to the Commission and the petitioning subdivider.  There is no such report in the record here.  In fact, we do not believe the Commission can even proceed with a public hearing without having this report ten days before said hearing.  Such report would have given RamsHead the opportunity to alter nonconforming exits onto the public roadways before notifying the Commission it desired to proceed.  The Commission .failed to comply with this requirement.  We find it inequitable for its own committee to fail to issue the required report and then for it to find flaws in the plat at the hearing.[3]  This was too late for RamsHead to change its plans, and the problem became particularly troublesome in this instance when the only evidence of

---

**2.**  We observe that RamsHead's notice did not inform the landowners that the application could be viewed in the Building Commissioner's office.  *See* Johnson County Plan Commission of Johnson County, Indiana Rules of Procedure, Art. IV, 1(a)(2)5, *supra.*  However, because the application is not required to be filed in that office, we conclude this requirement is of no effect.

**3.**  Evidently, the Technical Committee had informally reviewed RamsHead's application at some point in time because RamsHead filed a letter indicating it had supplied certain desired items the committee had requested.  However, we have found no report as such was ever filed with the plat application.

such flaws in the plat was from the testimony of adjacent landowners. Such testimony is irrelevant in establishing whether a plat complies with a master plan, ordinances, and statutes. *Carpenter v. Whitley County Plan Commission*, (1977) 174 Ind.App. 412, 367 N.E.2d 1156. The testimony of the landowners here was purely speculative and not of the nature to illuminate RamsHead's failure to comply with the county ordinances. Rather, the owners expressed their personal opinions on the effect the project would have on their private holdings. According to the ordinance's submission provisions, technical details should be judged in the Technical Committee's report and *not* at the public hearing unless, of course, a subdivider decides to proceed to hearing while ignoring the committee's recommendations. The Commission's findings in this matter of traffic problems lacked a substantial basis.

*Drainage Plan:* The Commission's conclusions regarding RamsHead's proposed drainage system clearly establish that the plans were not acceptable and were thus a major factor in the Commission's disapproval of the plat. However, Subdivision Control Ordinance § 402.4 unequivocally denies the Commission the right to make such decisions concerning drainage plans in preliminary plat applications. That function is the bailiwick of the County Drainage Board. Granted, the approval of the plat's drainage plans by the County Drainage Board is a precedent to the public hearing, but again, we find the fault for the absence of approval for RamsHead's plans lies with the Commission, which jumped the gun by scheduling the public hearing much too soon.[4] Our conclusion, then, with regard to the Commission's findings revolving around the drainage plan is that they had no authority to make them.

*Miscellaneous:* The Commission made a finding that the plat failed to include sidewalks as required by Subdivision Control

Ordinance § 702.4. RamsHead argues the provisions in the ordinance outlining the plat submission procedure does not compel the inclusion of sidewalks in the preliminary plat. We tend to agree with the Commission in this matter because § 402(j) of the submission provisions obliges the applicant to include "all existing and proposed permanent features" in its plat. However, we must again point out to the Commission that it was the responsibility of its Technical Committee to bring such error to RamsHead's attention prior to the public hearing. Any Commission findings putting fault upon RamsHead are unsupportable.

The last finding we must dispose of regards the type of planned unit development RamsHead plans to build. The Commission determined the plat failed to conform to the zoning standards of the subject zoning district. That is a basically irrelevant finding. First of all, RamsHead failed to specify, and the Commission further failed to elicit from it, which of the two types of planned unit development RamsHead was proposing. A declaration of one *may* require a recommendation for a zoning amendment (Zoning Ordinance § 314). Thus, it is not for the Commission to declare the plat does not conform to zoning requirements—it is the Commission's duty to decide whether to accept the proposed changes. Again, the Commission erred in its findings.

After reaching all of the above conclusions about the Commission's findings, we agree with the trial court's basic judgment that the Commission erred in disapproving RamsHead's preliminary plat. However, we disagree with the trial court's judgment mandating its approval.

*Approval of plat*

■ There is absolutely no question the trial court had the authority to mandate the Commission to approve RamsHead's preliminary plat so long as it conformed to the

---

4. RamsHead claims the Commission and the County Drainage Board have adopted a policy contrary to the ordinance whereby the Drainage Board will not approve the drainage plan until the plat is approved by the Commission. Rams-

Head has not cited us to any evidence in the record of such policy beyond its bald assertions thereof. Thus, we must assume the provisions of the ordinance are still applicable.

concrete standards set forth in the county ordinances. *See Knutson v. State, supra; Tippecanoe County Area Plan Commission v. Sheffield Developers, Inc.,* (1979) 181 Ind.App. 586, 394 N.E.2d 176; *Dosmann v. Area Plan Commission of St. Joseph County,* (1974) 160 Ind.App. 605, 312 N.E.2d 880. Such is merely a ministerial function in which the Commission would have absolutely no discretion. However, the fact remains that RamsHead did not comply with the ordinances involved. RamsHead did not include, among other things, either an approved drainage plan or a report from the Technical Committee. Regardless of the Commission's role in encouraging these defects, our decision to reverse the Commission's disapproval is based more on the fact that it really had no authority to hold its public hearing before RamsHead had the opportunity to comply with the ordinances. We do not, and cannot, conclude that such behavior warrants a decision the Commission is estopped from requiring such compliance, as the trial court held. We do not condone the Commission's actions so what we do decide is that RamsHead may refile its application for preliminary plat approval without paying further fees. We presume the Commission in considering the new application will follow its own procedure and will properly hear and decide the matter before it.

Our decision to remand is dictated by our supreme court's holding in *Indiana Alcoholic Beverage Commission v. Lamb,* (1971) 256 Ind. 65, 267 N.E.2d 161, where that court refused to uphold a trial court's order that the Alcoholic Beverage Commission grant a three-way permit, as had been petitioned. In that case, as here, the petitioners had not received their due process in the administrative hearing but neither had they established their right to the permit; thus, only remand was appropriate on initial review. *See Indiana State Board of Registration & Education for Health Facility Administrators v. Cummings,* (1979) 180 Ind.App. 164, 387 N.E.2d 491. However, "[i]f upon remand the agency unlawfully withholds or unreasonably delays the redetermination of the case, then the trial court may compel agency action by direct order." *Indiana Alcoholic Beverage Commission v. Johnson,* (1973) 158 Ind.App. 467, 476, 303 N.E.2d 64, 69; *Bolerjack v. Forsythe,* 461 N.E.2d 1126 (1984) Ind.App. RamsHead was denied a proper hearing so we remand for new proceedings, ordered by the trial court.

Affirmed in part, reversed in part and remanded.

CONOVER, P.J., and NEAL, P.J. (sitting by designation), concur.